## CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY ET AL. *v.* UNITED STATES ET AL.

**APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF TEXAS.**

No. 190.   Argued March 4, 1927.—Decided April 11, 1927.

1. An order of the Interstate Commerce Commission, in a proceeding to fix reasonable maximum rail-and-water rates, and purporting to do this by adopting the existing all-rail rates with a fixed differential, (alleged by complainant to represent the cost of water transportation insurance,) should not be construed as an attempt to equalize the two classes of rates merely because of its form or by laying undue stress upon recitals in the report.   P. 32.

2. If the determination of the Commission finds substantial support in the evidence, the courts will not weigh the evidence nor consider the wisdom of the Commission's action.   P. 33.

3. Under the Panama Canal Act, August 24, 1912, par. 13 of § 6, read with par. 4 of § 15 of the Interstate Commerce Act, and the Transportation Act, the Commission has power to require a rail carrier to embrace in a through rail-and-water route less than the entire length of its railroad lying between the termini of the through route proposed, irrespective of whether both rail and water " are used under a common control, management, or arrangement for a continuous carriage or shipment," Interstate Com. Act § 1.   P. 34.

4. The right of the Commission to consider a case under a particular provision of the statute depends on the facts alleged and not on such provision's being formally referred to in the complaint.   P. 36.

5. To plead the law relied on, is no more necessary in a proceeding before the Commission than it is in a judicial proceeding.   P. 36.

5 F. (2d) 888, affirmed.

APPEAL from a decree of the District Court dismissing the bill in a suit by the Chicago, Rock Island & Pacific and St. Louis-San Francisco Railway Companies to enjoin enforcement of an order of the Interstate Commerce Commission establishing joint rail-and-water and rail-and-water-and-rail rates on cotton.

Mr. A. B. Enoch, with whom Messrs. M. L. Bell, W. F. Dickinson, T. P. Littlepage, and M. G. Roberts were on the brief, for appellants.

Mr. Blackburn Esterline, Assistant to the Solicitor General, with whom Solicitor General Mitchell was on the brief, for the United States.

Mr. Daniel W. Knowlton, with whom Mr. P. J. Farrell was on the brief, for the Interstate Commerce Commission.

Mr. R. C. Fulbright for the Houston Cotton Exchange and Board of Trade, submitted.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This is a suit to annul, and enjoin the enforcement of, an order of the Interstate Commerce Commission prescribing joint rail-and-water and rail-water-and-rail rates (both hereinafter designated as rail-and-water rates) on cotton from points in Oklahoma, via Galveston and certain steamship lines, to New England destinations.. The complaint before the commission was brought by the Houston Cotton Exchange and Board of Trade and other similar organizations against appellants and a number of other carriers, to have prescribed and established just and reasonable joint through rates on cotton from Oklahoma points through Texas ports to various points of destination in the northeastern part of the United States and Canada, including New England territory. The

modified final order of the commission required appellants to establish and maintain for the transportation of cotton from Oklahoma points, via Galveston and the lines of the Mallory Steamship Company and the Southern Pacific Company-Atlantic Steamship Lines, to destinations in New England territory, joint rail-and-water rates not exceeding "rates 4 cents per 100 pounds lower than the present all-rail rates from and to the same points,"—not, however, lower than $1.50 per 100 pounds. Prior to the commission's order, no joint rail-and-water rates on cotton were in effect between the points mentioned. The rate to New York consisted of the local rail rate to Galveston plus the water rate therefrom and a loading charge. To New England points, the rate was made by adding the rail rate beyond New York. The all-rail routes from Oklahoma to the New England territory points are through St. Louis, Memphis, and other Mississippi crossings; and the joint all-rail rates were lower to New England destinations than the combination of local rail-and-water rates. On commodities other than cotton, joint rail-and-water rates were in effect, and these were lower than the all-rail rates. The commission found that the establishment of joint rail-and-water rates on cotton between the points in question was desirable in the public interest, and that the existing rates for such transportation were unreasonable to the extent that they exceeded or may exceed rates constructed by the deduction of 4 cents from the present all-rail rates. 87 I. C. C. 392; 93 I. C. C. 268. The court below, consisting of three judges, after a hearing, entered a decree dismissing the bill for want of equity. 6 F. (2d) 888.

Appellants assign 21 specifications of error; but the objections to the commission's order, so far as necessary to be considered here, may be summarized as follows: (1) the commission undertook to equalize rail-and-water rates with the all-rail rates, a power which it does not

possess; (2) if the order be treated as made under the power to fix reasonable rates, it is arbitrary and without supporting evidence; (3) the result of the order is to short-haul appellants' lines contrary to paragraph 4, § 15, of the Interstate Commerce Act as amended by § 418 of the Transportation Act, 1920, c. 91, 41 Stat. 456, 485; and (4) the order is based upon paragraph (13) of § 6, added to the Interstate Commerce Act by the Panama Canal Act of August 24, 1912, c. 390, 37 Stat. 560, 568, and is, therefore, void because the authority of the commission was not invoked under that paragraph.

*First.* Appellants' argument under this head seems to be predicated upon the contention that the order of the commission established an exact relationship between the rail-and-water rates and the present all-rail rates, the differential of 4 cents being, it is said, the amount charged by insurance companies as a premium for insurance to cover the risk of water transportation; and that an analysis of the commission's order and report shows that the commission itself recognized that it was undertaking to make such an equalization. The complaint before the commission plainly sought the establishment of reasonable rates, and the order of the commission directed the carriers to discontinue the then existing rates made up of combinations of local rates and substitute the maximum joint rates which were prescribed in the words already stated. The commission found that rates were and would be unreasonable to the extent they exceeded or might exceed those prescribed. In form, the action of the commission was responsive to the case made by the complaint, and to hold that, in fact, its order was not one fixing reasonable rates but an order equalizing rates would be to put undue stress upon certain recitals contained in the report, to which our attention is called but which need not be detailed. If these recitals stood alone, they might give plausibility to the contention;

but from a consideration of the entire record we think it quite unfair to conclude that the commission undertook to exercise an authority entirely different and distinct from that which the complaint specifically invoked.

There is nothing in *Southern Pacific Co.* v. *Interstate Commerce Commission,* 219 U. S. 433, that requires a different conclusion. In that case it appeared upon the face of the record that the commission had not exerted its power to correct an unjust and unreasonable rate, but had made the order complained of upon the theory that it possessed the power to set aside a just and reasonable rate whenever the commission deemed that it would be equitable to shippers in a particular district to put in force a reduced rate. In reaching that conclusion the court thought that the complaint and answer presented the latter issue; that while the opinion of the commission might contain some sentences indicating the contrary, when considered as a whole, in the light of the record, it clearly appeared that the order was based upon that theory; and that this was borne out by the dissenting opinion, which proceeded upon the express ground that the order was an exertion of a power not possessed, with no language in the prevailing opinion to indicate the contrary. Here, it is true, the order fixes the rail-and-water rate by relating it in terms to the all-rail rate; but, since we accept the view that the former was, in fact, established as a just and reasonable rate, there can be no objection to the form of words adopted as a method of short and convenient description of that rate. The power of the commission to equalize rates, if its authority to that end should be invoked, is not involved.

*Second.* If the order of the commission be unsupported by the evidence, it is, of course, void. *New England Divisions Case,* 261 U. S. 184, 203. But if the determination of the commission finds substantial support in the evidence, the courts will not weigh the evidence nor consider

the wisdom of the commission's action. *Id.,* 204; *Virginian Ry. Co.* v. *United States,* 272 U. S. 658. The order here does not rest alone upon comparisons with the all-rail rates, as seems to be contended, but is supported by other established facts and circumstances as well. See *Western Chem. Co.* v. *United States,* 271 U. S. 268, 271. Nothing is to be gained by a review of the evidence. It is enough to say that both the commission and the lower court thought it was ample to justify the order, and, upon a consideration of the entire record, we find no reason to differ with them in that conclusion.

*Third.* Does the order of the commission result in short-hauling appellants' lines contrary to the provisions of paragraph 4 of § 15 of the Interstate Commerce Act, as amended by the Transportation Act, 1920? The pertinent provision of that paragraph is that the commission, in establishing a through route, shall not, "except where one of the carriers is a water line," require any railroad carrier to embrace in such route substantially less than the entire length of its railroad lying between the termini of the proposed through route.. That the through routes here established by the commission's order do embrace substantially less than the entire length of appellants' railroads, etc., is not denied. And appellants' contention is that the exception, "where one of the carriers is a water line," has reference only to such a carrier as comes within the description of § 1 of the Interstate Commerce Act, which provides, among other things, that the provisions of the act shall apply to common carriers engaged in "(a) The transportation of passengers or property wholly by railroad, or partly by railroad and partly by water *when both are used under a common control, management, or arrangement for a. continuous carriage or shipment;* . . ." c. 91, 41 Stat. 456, 474.

Appellees insist that the rail and water lines here involved come within the italicized portion of this provision.

But it is unnecessary to pass upon · that question, since clearly the order in this respect can be sustained under the later and broader provisions of paragraph (13) of § 6, added to the Interstate Commerce Act by the Panama Canal Act, *supra.* That paragraph provides—

" When property may be or is transported from point to point in the United States by ·rail and water through the Panama Canal or otherwise, the transportation being by a common carrier or carriers, and not entirely within the limits of a single State, the Interstate Commerce Commission shall have jurisdiction of such transportation and of the carriers, both by rail and by water, which may or do engage in the same, in the following particulars, in addition to the jurisdiction given by the Act to regulate commerce, as amended June eighteenth, nineteen hundred and ten:

.  .  .

"(b) To establish through routes and maximum joint rates betwen and over such rail and water lines, and to determine all the terms and conditions under which such lines shall be operated in the handling of the traffic embraced."

This addition to the Interstate Commerce Act, materially extends the jurisdiction of the commission in respect of land and water transportation and the carriers engaged in it, whenever property may be or is transported in interstate commerce by rail and water by a common carrier or carriers; and the obvious intention of Congress would be substantially limited in effect if the quoted provisions were held to be subject to the restriction that both rail and water must be used under a common control, ·etc. The phrase, " except where one of the carriers is a water line," was introduced in an amendment made to · the Interstate Commerce Act by the Transportation Act, 1920, and it is not unreasonable to include within the scope of its reference, the then existing paragraph (13)

of § 6. And this view is strengthened by the consideration that the Transportation Act, 1920, as a part of the new policy which it introduced in respect of the regulation of interstate transportation, *Wisconsin R. R. Comm.* v. *C., B. & Q. R. R. Co.,* 257 U. S. 563, 585; *New England Divisions Case, supra,* p. 189, directed the commission to establish through routes, joint classifications, etc., both in respect of railroad and water carriers, " whenever deemed by it to be necessary or desirable in the public interest," etc. 41 Stat. 485. And the same act declares it to be " the policy of Congress to promote, encourage, and develop water transportation, service, and facilities in connection with the commerce of the United States, and to foster and preserve in full vigor both rail and water transportation." Sec. 500, 41 Stat. 499.

These and other provisions emphasize the intention of Congress to broaden the control of the Interstate Commerce Commission over rail-and-water transportation and, generally, to extend the regulatory power of that body over all such transportation in the public interest. It would be quite inconsistent with that broad purpose to adopt the narrow construction of the statutory provisions under review which is advanced by appellants. On the whole, and especially in the light of the definite congressional policy which the legislation reflects, *Richardson* v. *Harmon,* 222 U. S. 96, 104; *Holden* v. *Stratton,* 198 U. S. 202, 213–214; *Minnesota* v. *Hitchcock,* 185 U. S. 373, 395, we find no difficulty in rejecting the construction thus advanced and adopting that which we have indicated, without, at the same time, doing violence to the fair meaning of the language actually employed.

*Fourth.* In disposing of the final objection, little need be said. The contention is that the commission was without power to predicate its order on paragraph (13) of § 6 of the act, because there is no formal reference in the complaint to that paragraph nor an order for an investi-

gation under it on the commission's own motion. But the allegations of the complaint in matters of fact were sufficient to authorize the commission to consider the case under that provision as well as others; and this is enough. To plead the law relied on, is no more necessary in a proceeding before the commission than it is in a judicial proceeding.

*Decree affirmed.*