## AKRON, C. & Y. RY. CO. et al. v. UNITED STATES (INTERSTATE COMMERCE COMMISSION, Intervener).

District Court, W. D. New York. July 19, 1927.

**1. Commerce ⊖87 — Three proceedings, involving freight rates on salt, held properly consolidated for joint hearing by Interstate Commerce Commission (Interstate Commerce Act, § 17, par. 1 [49 USCA § 17]).**

Three proceedings, involving freight rates on salt from points in New York, Ohio, and Michigan to New England and trunk line territory, *held* properly consolidated for a joint hearing by Interstate Commerce Commission, under Interstate Commerce Act, § 17, par. 1 (49 USCA § 17 [Comp. St. § 8586]).

**2. Commerce ⊖87—Salt companies and consumers held properly permitted to intervene in proceeding to investigate lawfulness of rates (Interstate Commerce Act, § 15, par. 7 [49 USCA § 15]).**

Salt companies and consumers, interested in rock salt rates, *held* properly permitted to intervene in proceeding under Interstate Commerce Act, § 15, par. 7 (49 USCA § 15 [Comp. St. § 8583]), for investigation of lawfulness of rates, rules, regulations, and practices of carriers.

**3. Commerce ⊖87—Where complaint attacks rate from particular points of origin in one group, issues will not be unduly broadened by permitting interventions relating to reasonableness of group rate as applied from other points in group.**

Where complaint attacks the rate of a certain commodity from a number of points of origin in one group, issues will not be unduly broadened by allowing interventions relating to the reasonableness of the same group rate as applied from other points in the group.

**4. Commerce ⊖87—Interstate Commerce Commission, finding rate unreasonable, has power to require reduction (Interstate Commerce Act, § 15, par. 1 [49 USCA § 15]).**

Under Interstate Commerce Act, § 15, par. 1 (49 USCA § 15 [Comp. St. § 8583]), the Commission has power, if it finds a rate attacked to be unreasonable, to require a reduction of that rate to a basis found to be reasonable.

**5. Commerce ⊖87—Statute authorizing Interstate Commerce Commission to fix rates yielding fair return does not prevent reduction of unreasonable rate, without proof of annual net operating income (Interstate Commerce Act, §§ 1, 15a [49 USCA §§ 1, 15a]).**

Interstate Commerce Act, § 15a (49 USCA § 15a [Comp. St. § 8583a]), authorizing Com-

mission to establish rates which, as a whole, will earn a fair return on the aggregate value of railroad property used in the transportation service, does not prevent Commission from requiring reduction of rates found to be unreasonably high in violation of section 1 (49 USCA § 1 [Comp. St. § 8563]), though there be no proof of the annual net railway operating income above or below the rate of return fixed by the Commission.

**6. Commerce ⊚⇒95—Absent irregularity in proceeding or misapplication of legal rules, Interstate Commerce Commission's finding as to reasonableness of rates supported by evidence is conclusive.**

Question whether a rate is unreasonable or discriminatory is a question on which the finding of the Interstate Commerce Commission is conclusive, if supported by any substantial evidence, unless there is some irregularity in the proceeding, or some error in the application of rules of law.

**7. Commerce ⊚⇒95—Courts will not weigh evidence heard by Interstate Commerce Commission in determining reasonable rates.**

It is not for the courts to weigh evidence heard by Interstate Commerce Commission in determining reasonableness of rates.

In Equity. Suit by the Akron, Canton & Youngstown Railway Company and others against the United States, to annul and enjoin enforcement of an order of the Interstate Commerce Commission, wherein such Commission intervened. Motion for injunction denied.

Parker McCollester and Marion B. Pierce, both of New York City (Halsey Sayles, of Elmira, N. Y., and E. H. Burgess and W. J. Larrabee, both of New York City, on the brief), for petitioners.

Blackburn Esterline, Asst. Sol. Gen., of Washington, D. C., and Richard H. Templeton, U. S. Atty., of Buffalo, N. Y.

J. Stanley Payne, of Washington, D. C. (P. J. Farrell, of Washington, D. C., of counsel), for Interstate Commerce Commission.

Before MANTON, Circuit Judge, and HAZEL and ALDER, District Judges, holding court pursuant to Act Oct. 22, 1913, c. 32, 38 Stat. 219 (28 USCA § 47).

MANTON, Circuit Judge. The petitioners, 28 railroad corporations, operating in the region north of the Potomac and Ohio rivers and east of the Mississippi river, have petitioned this court to annul and enjoin the order of the Interstate Commerce Commission in the Eastern Salt Cases, 122 Interst. Com. Com'n R. 21. The proceedings before the

Commission are referred to as No. 14250, Diamond Crystal Salt Co. et al. v. Aberdeen & Rockfish R. R. Co. et al.; No. 16695, International Salt Company, Inc., et al. v. Adirondack & St. Lawrence R. R. Co. et al.; No. 2440, Investigation and Suspension of Rates on Salt from New York Points to Eastern, New England, and Canadian Points.

The order in question, dated February 14, 1927, reduced rates for the transportation of salt in carloads from points in New York, Ohio, and Michigan to trunk line territory and New England. Ohio and Michigan are within the Central Freight Association territory, which is north of the Ohio river and bounded on the east by a line drawn through Buffalo, N. Y., and Pittsburgh, Pa. Trunk line territory embraces that part of the United States east of the Buffalo and Pittsburgh line and on and north of the line of the Norfolk & Western Railway, exclusive of New England. Rates from the Central Freight Association to points in trunk line territory have been for a number of years on a so-called percentage system; the rate from Chicago to New York being taken as a base for the rates from the intermediate territory, which were at a fixed percentage of the base rates.

Proceeding No. 14250 was instituted by six salt producers of Michigan and Ohio. At this time, the base rate from Chicago to New York was 43 cents per 100 pounds; the rate from Detroit to New York, 33.5 cents, and from Cleveland, 30.5 cents. Their complaint was that the salt rate from Chicago to New York of 43 cents was unjust and unreasonable; that all the salt rates from Ohio and Michigan salt fields to points in trunk line territory and New England were unjust and unreasonable, and in violation of section 1 of the Interstate Commerce Act (49 USCA § 1 [Comp. St. § 8563]). A full hearing was had of this question, and resulted, on October 14, 1924, in the Commission issuing its report and order (Salt Cases of 1923, 92 Interst. Com. Com'n R. 388), holding and directing that the base rate on salt in carload lots from Chicago to New York should in the future be not more than 33.5 cents and the rate from the other points in Ohio and Michigan on fixed percentages of this base rate from the producing points to the respective destinations. In this report, the Commission prescribed a uniform commodity description, namely, and gave the description as salt (sodium chloride) in packages, in blocks, or in bulk, carloads, and directed that this be published in the tariffs of the carriers

generally in lieu of the various descriptions theretofore appearing in the tariffs, such as coarse salt in bulk, rock salt, block salt, evaporated salt, common salt, table salt, etc. It found that any differences in rates resulting from differentiation in commodity rate descriptions between the various kinds of salt was and for the future would be unduly prejudicial and preferential, and would constitute an unreasonable practice. It also prescribed carload minimum weight of 45,000 pounds for uniform application.

On May 4, 1925, on application of the carriers, the Commission reopened No. 14250 for further hearing as to the rates from Chicago, Ohio, and Michigan to the trunk line territory and New England. The effective date of the order entered was postponed until the further order of the Commission, in so far as it required changes on salt in carloads, first, as a base rate from Chicago to New York; second, the rates from Detroit and Saginaw, Mich., and Akron and Cleveland, Ohio, to destinations in trunk line territory; and, third, rates from Akron and Cleveland to destinations on the Washington & Old Dominion Railroad. The further hearing in this proceeding was directed to be had before an examiner of the Commission at Atlantic City on July 20, 1925, where the two other proceedings here involved were also directed to be held.

In proceeding No. 16695, instituted by producers of salt in the western part of New York state, the petition declared that the rates on salt from their respective points to destinations in trunk line and New England territories were unreasonable in comparison with the rates contemporaneously maintained and required to be established from competitive points in the Central Freight Association territory to the same destinations, and were unduly prejudicial to the New York producers, and preferential to their competitors, in violation of sections 1 and 3 of the act (49 USCA §§ 1, 3 [Comp. St. §§ 8563, 8565]) respectively. The rates complained of were those required in proceeding No. 14250. They petitioned that, in order to avoid an increase in the undue prejudices under which they were laboring, the Commission postpone the effective date of its order in No. 14250, in so far as it required a base rate of 33½ cents to be established for the transportation of salt in carloads from Chicago to New York, and rates to be published on the percentage thereof from other cities in Michigan and Ohio to destinations in trunk line and New England territories, until a hearing could be granted on their petition. The carriers in No. 14250 also requested a postponement of the effective date of the order, and this the Commission granted. Other salt companies were permitted to intervene in this proceeding; also consumers in the trunk line territory and New England.

No. 2440 was against carriers, all of whom were parties in No. 14250. They had failed to comply with the Commission's order in so far as it required a uniform commodity description of salt and minimum car weights. After the effective date of the order in No. 14250, the carriers in question continued to maintain from New York producing points to destinations in trunk line and New England territories, two different rates on salt, one on rock salt and a higher rate on other kinds of sodium chloride subject to different carload minimum weights. They were advised by the Commission that they were not complying with the order. They thereupon filed schedules with the Commission which proposed to cancel the rates and minimum weight on rock salt leaving the higher rates on salt to apply to rock salt. Protests were lodged against this by producers of salt and consumers. Pursuant to section 15, par. 7, of the Interstate Commerce Act (36 Stat. 552 [49 USCA § 15 (Comp. St. § 8583)]; 41 Stat. 486), the Commission suspended the operation of these schedules until November 30, 1925, and investigated the lawfulness of the rates, rules and regulations, and practices as stated in the schedules. This is the proceeding designated as I. & S. No. 2440. Later, the effective date, by consent of the carriers, of the proposed schedules was fixed as March 27, 1927. The hearing at Atlantic City was concluded on July 22, 1925. The Commission made its report March 18, 1926. Exceptions were filed, and oral argument and hearing had thereon, and thereupon a final order of February 14, 1927, was issued.

The finding of the Commission again fixed the rate from Chicago to New York at 33½ cents and held that this should be applied in constructing the rates on salt from Ohio and Michigan to points east. It also fixed the maximum rate from Detroit to New York as 26 cents; from Akron and Cleveland, Ohio, to New York, at 24 cents. It found that the proposed increases in rates incident to the change in description and minimum on common salt, which would have increased the rates on rock salt, were not justified; also that the rates on salt from New York producing points to points in trunk line and New England territories were unjust and unreasonable to the extent that they exceeded the

rates found by the Commission to be reasonable. It made no specific finding as to the claim of undue preference and prejudice. It pointed out that the rates prescribed would remove any undue preference or prejudice, as between New York producers, on the one hand, and Ohio and Michigan, on the other.

The attack by the petitioners here on this order is based upon the claim (a) that there is a want of evidence, or no substantial evidence, to support the order made; (b) that the Commission erroneously allowed interventions raising new issues, which the petitioners were not prepared to meet; (c) that in investigation and suspension order No. 2240 the Commission exceeded its power; and (d) that the order issued was in violation of section 15a of the Interstate Commerce Act (49 USCA § 15a [Comp. St. § 8583a]).

The three proceedings relate to the matter of rates on salt in one rate-making territory as referred to. No. 14250 and No. 16695 were the same, for all the complainants in No. 14-250 intervened in No. 16695, and the complainants in No. 16695 intervened in No. 14-250. The railroad companies operating in this official classification territory were included as defendants. The issues were the same, because in No. 16695 the New York producers complained that the rates from their producing points to destinations in trunk line and New England territories were unreasonable and unduly prejudicial, as compared with the rates from competing salt-producing points in Ohio and Michigan to the same destinations, and in No. 14250 the Ohio and Michigan producers alleged that their rates in the same territory were unreasonable and unduly prejudicial, as compared with the rates from New York points. No. 2440 involved the unfairness of the rates on rock salt from New York points to the same destination territory. [1] Under these circumstances, it was proper for the Commission to assign the three cases for joint hearing, for section 17, par. 1, of the Interstate Commerce Act ([49 USCA § 17; Comp. St. § 8586] 40 Stat. 270), provides that the Commission may conduct its proceeding in such manner as will best conduce to the proper dispatch of business and to the ends of justice. No objection seems to have been entered against the Commission's suggestion that all parties would be considered parties to that proceeding for all purposes. The Commission announced, further, that the three proceedings would be regarded as in a consolidated hearing. The record indicates that the three cases were assigned for a joint hearing. The parties were all represented before the Commission, the issues were made clear, and full opportunity was had to present whatever was of assistance in reaching a just determination of these issues. The evidence adduced at the hearing was before the Commission for its assistance in deciding the questions of law.

The claim that new issues were presented which the petitioners had no notice of or opportunity to answer is not well founded. The petition in this suit and the complaint lodged against the order of the Commission recite the matters which were before the Commission for decision. The prejudicial character of the rates on salt under section 3 of the statute, and the question of the reasonableness of the rates on salt under section 1 of the statute were all matters which were litigated. The defendants were given notice that the unreasonable salt rates referred to were attacked, and they were given opportunity to answer and defend the reasonableness of the rates. Evidence of unreasonableness of the rates per se, as well as relatively, was clearly relevant and admissible, and the petitioners cannot justly complain as to the introduction of such testimony. The issues in I. & S. 2440 presented the reasonableness of the rates on rock salt, whereas the complaint as filed put in issue the rates on evaporated salt, and the interventions presented no new issue which could not be litigated in the proceeding before the Commission.

The reasonableness of the rates on rock salt were in issue in I. & S. 2440 and the Salt Cases of 1923. The Commission required that there be no difference in the rates on the various kinds of salt, and that there should be published in the tariffs only one commodity description of salt. The tariffs were suspended in I. & S. 2440, and the carriers were all defendants in both No. 14250 and 16695, and they proposed to cancel their rates on rock salt, which were then lower than the rates on other kinds of common salt, leaving the higher rates to apply to rock salt. The carriers sought to bring about the uniformity in the salt rates required by the Commission by increasing the rock salt rates, instead of reducing the other rates. It was due to this that protest arose, and the Commission suspended the proposed schedules and entered upon the investigation in I. & S. 2440. This resulted in the investigation of the rock salt rates published by the carriers who were defendants in the three causes.

[2] All of the interveners were interested in rock salt rates, and were protestants in I. & S. 2440, and were, therefore, proper parties

to the No. 2440 case, as well as the others. The petitioners had notice that the lawfulness of the rates on rock salt was in issue, and what occurred under the circumstances did not raise new issues or unduly broaden the issues of which they now complain.

[3] All of the important salt-producing points in New York were grouped by the carriers, and one rate applied from all of these points of origin. The Commission's order did not disturb the group, but prescribed rates to points of destination from the group. In a proceeding in which the rate from a number of points of origin in one group is attacked, it will not unduly broaden the issues to allow interventions relating to the reasonableness of the same group rate as applied from other points in the group. Full opportunity was accorded petitioners to make defense. The hearing in that respect was fair and full.

[4] Section 15, par. 7, empowered the Commission to entertain proceeding No. 2440. After a full hearing, the Commission may make such order with reference to the proposed new rate as would be proper in a proceeding initiated after it had become effective. It was within the power of the Commission, if it found the rate attacked to be unreasonable, under section 15, par. 1, to require a reduction of that rate to a basis found to be reasonable. Advances in Rates, Western Case, 20 Interst. Com. Com'n R. 307. It has power either to increase or decrease the then existing rates. Western Paper Makers' Chemical Co. v. U. S., 271 U. S. 268, 46 S. Ct. 500, 70 L. Ed. 941; Mo. Pac. R. Co. v. Boone, 270 U. S. 469, 46 S. Ct. 341, 70 L. Ed. 688; Excelsior from St. Paul, 36 Interst. Com. Com'n R. 349; Naval Stores from Southern Points, 87 Interst. Com. Com'n R. 740.

[5] Nor does section 15a (49 USCA § 15a [Comp. St. § 8583a]) of the Interstate Commerce Act justify the attack made upon the order. That section provides:

"In the exercise of its power to prescribe just and reasonable rates the Commission shall initiate, modify, establish or adjust such rates so that carriers as a whole (or as a whole in each of such rate groups or territories as the Commission may from time to time designate) will, under honest, efficient and economical management and reasonable expenditures for maintenance of way, structures and equipment, earn an aggregate annual net railway operating income equal, as nearly as may be, to a fair return upon the aggregate value of the railway property of such carriers held for and used in the service of transportation." It is subject to the proviso "that the Commission shall have reasonable latitude to modify or adjust any particular rate which it may find to be unjust or unreasonable, and to prescribe different rates for different portions of the country."

Beyond the point made that there is no proof of the annual net railway operating income of the petitioners above or below the rate of return fixed by the Commission as provided by paragraph 3, § 15a, this section does not prevent the Commission from requiring a reduction of rates found by it to be unreasonably high in violation of section 1. Dayton-Goose Creek Ry. v. U. S., 263 U. S. 456, 44 S. Ct. 169, 68 L. Ed. 388, 33 A. L. R. 472. Financial loss which has been sustained as claimed by the petitioners, because of this rate, does not constitute irreparable injury or form the basis of the equitable relief here sought. Chicago, Rock Island & Pacific R. Co. v. U. S., 274 U. S. 29, 47 S. Ct. 486, 71 L. Ed. 911, April 11, 1927; New England Divisions Case, 261 U. S. 184, 43 S. Ct. 270, 67 L. Ed. 605; State of New York v. U. S., 257 U. S. 591, 42 S. Ct. 239, 66 L. Ed. 385.

[6, 7] The determination of whether a rate is unreasonable or discriminatory is a question on which the finding of the Commission is conclusive, if it is supported by any substantial evidence, unless there is some irregularity in the proceeding or some error in the application of the rules of law. Western Paper Makers Chemical Co. v. U. S., 271 U. S. 268, 46 S. Ct. 500, 70 L. Ed. 941; Skinner & Eddy Corp. v. U. S., 249 U. S. 557, 39 S. Ct. 375, 63 L. Ed. 772; Spiller v. Atchison, T. & S. F. Ry., 253 U. S. 117, 40 S. Ct. 466, 64 L. Ed. 810. It is not for the courts to weigh the evidence introduced before the Commission. Western Paper Makers' Chemical Co. v. U. S., supra. And the soundness of the reasoning by which the conclusions are reached and the wisdom of the regulations which it prescribes are matters which are left by Congress to the Commission as the administrative "tribunal appointed by law and informed by experience." Ill. Central Ry. v. Interstate Commerce Commission, 206 U. S. 441, 27 S. Ct. 700, 51 L. Ed. 1128. An examination of this record requires us to support the order of the Commission as against the attacks made upon it.

The application for a restraining order under the provisions of the Urgent Deficiency Appropriations Act of October 22, 1913 (38 Stat. 219), is denied.