## TEXAS & P. RY. CO. v. UNITED STATES. LOUISIANA & A. R. CO. et al. v. SAME.

Nos. 186, 187.

June 16, 1930.

District Court, S. D. Texas, at Galveston.

T. J. Freeman, of New Orleans, La., T. D. Gresham, of Dallas, Tex., Esmond Phelps, of New Orleans, La., and Robert L. W. Thompson, of Dallas, Tex., for petitioners Texas & P. Ry. Co.

A. L. Burford, of Shreveport, La., and R. E. Milling, Jr., of New Orleans, La., for petitioners Louisiana & A. R. Co.

Elmer B. Collins, Sp. Asst. to Atty. Gen., John Lord O'Brian, Asst. to Atty. Gen., and Henry M. Holden, U. S. Atty., of Houston, Tex., for the United States.

John St. Paul, Jr., of New Orleans, La., for intervener Board of Commissioners Port of New Orleans.

R. L. Bobbitt, Atty. Gen., Jack Blalock, Asst. Atty. Gen., Mart Royston, of Galveston, Tex., R. C. Fulbright, James J. Shaw, and Ball & Simmons, all of Houston, Tex., for interveners Galveston Chamber of Commerce and others.

Daniel W. Knowlton, of Washington, D. C., C. S. Burg, of St. Louis, Mo., Fred L. Wallace, of Fort Worth, Tex., G. B. Ross, of Galveston, Tex., and R. S. Outlaw, of Chicago, Ill., for interveners Interstate Commerce Commission and others.

Percy Saint, Atty. Gen., for the State of Louisiana.

Luther M. Walter, John S. Burchmore, and Nuel D. Belnap, all of Chicago, Ill., for interveners New Orleans Joint Traffic Bureau and others.

Before FOSTER, Circuit Judge, and GRUBB and HUTCHESON, District Judges.

HUTCHESON, District Judge.

These are injunction suits in which this court, convened under the applicable statute, is asked to set aside and enjoin the orders of the Interstate Commerce Commission, entered on June 24, 1925, June 29, 1927, and December 23, 1929, in docket No. 12798 and of December 23, 1929, in docket No. 20685.

These suits, brought by separate petitioners, involve substantially the same issues, and, upon order, they have been consolidated.

The Commission having postponed the effective date of the orders pending the hearing of these causes, no temporary injunction was issued, and the consolidated cause was submitted for final decree on the record made before the Commission.

This record consisted of more than seven thousand pages of testimony taken in the various hearings had from the time the first complaint was filed by the Galveston chamber of commerce and other Galveston interests in No. 12798 in 1921, until the last hearing in 1929.

In the disposition of the complaints, amended complaints, hearings, and rehearings, the Commission filed three extensive reports, the first on June 24, 1925 (100 I. C. C. 110), the second on June 29, 1927 (128 I. C. C. 349), the third on December 23, 1929 (160 I. C. C. 345), in which the nature of the controversy, the substance of the evidence received, and the conclusions of the Commission thereon are fully disclosed.

In each of the reports the Commission found and held that the rates to New Orleans between the territory in question and the Texas ports were unduly prejudicial to the Texas ports, and that such rates were unduly preferential of New Orleans. In this respect the findings of all of the reports are alike. They differ only in the following respects:

In the first report the relief order included more commodities, embraced a wider differential territory, fixed the excess distance to New Orleans over Galveston at which the differential should apply at 100 miles, and made the order embrace all of the carriers, including the complainants in the suits at bar.

In the second report, which was brought about by the demand of the Texas & Pacific Railway and the Louisiana Railway & Navigation System that they be excluded from the first order, in which the other carriers had acquiesced, the differential territory was somewhat reduced; the excess distance was changed from 100 miles to 25 per cent., petroleum and petroleum products and some other commodities were excepted from the order, and the Commission made a finding that "since the Texas and Pacific Railway and the Louisiana Railway and Navigation System do not serve any Texas ports, and have no controlling voice in fixing the level of the assailed rates to any of the Texas ports, they cannot be held guilty of undue preference or prejudice under the circumstances of this case."

The third report, brought about by the insistence of other carriers than the Texas & Pacific Railway and the L. R. & N. System, and the other persons interested, that the Commission had erred in its conclusion of law that the Texas & Pacific and L. R. & N. System should be excluded from the order, followed the first report in bringing the Texas & Pacific Railway and the Louisiana Railway & Navigation System under the terms of

the order, and the second report in the restrictive scope of the order.

In the first report, the Commission states the complaint thus: "The general basis of the complaint is relative distances to Galveston and New Orleans. Complainant recognizes the propriety of equalization between New Orleans and the Texas ports within reasonable limits, but contends that where the difference in haul becomes an important part of the service some difference in the rates should be made by fixed differentials, not based on distance scales. The suggestion in a general way is that a differential between the two ports should be accorded for differences in distance in excess of 25 per cent. It is urged that distance should be a controlling factor, inasmuch as we have found in a number of cases that the conditions of transportation throughout the southwestern States are substantially similar, and have established rate scales throughout those States which do not differ materially. The contention is that, under these circumstances, if the rates to Galveston are reasonable, the same rates to New Orleans, for materially longer hauls, must be relatively too low; that if the rates to New Orleans are reasonable, the rates to Galveston must be relatively too high; and that to carry freight to New Orleans for much greater distances than to Galveston at the same rates as to Galveston, is a waste of transportation, burdensome alike upon the carriers and the public. There is no evidence upon this record tending to show that any of the present rates to New Orleans are so low as to throw a burden upon other traffic." 100 I. C. C. 114–115.

In each of the three reports the Commission found that, taking into consideration all the pertinent facts as to the commodities selected for the order, the structure of rates complained of was prejudicial. In the first report 100 I. C. C. 121 it states the matter thus: "The policy of the southwestern carriers serving New Orleans, more particularly the Texas & Pacific, has been, generally speaking, to apply the Galveston rates to New Orleans on traffic moving from or to all points west of the Mississippi River, except points in Texas south of the Texas & Pacific. Such an adjustment necessarily disregards distance and commercial instead of natural advantages control. We have consistently refused to condemn such an adjustment where it is shown to serve the best interests of the public, but where, as here, it builds up one port at the expense of another equally favored by natural advantages from the origin

territory here considered, a line must be found beyond which distance may not be disregarded. * * * The facilities for water transportation from or to and at Galveston can not be preserved in full vigor under a rate adjustment which unduly favors New Orleans."

Again in that report, they say:

"We find that the present relationships of the assailed rates on export, import, and coastwise traffic, in carloads, from or to points [named] are unduly prejudicial to Galveston and unduly preferential of New Orleans.

"We further find that this undue prejudice should be removed by establishing the same rates to or from New Orleans or Galveston, as the case may be, in instances where the differences in distance from and to the two ports are not greater than 100 miles."

At the hearing which resulted in the second report, the findings of the Commission were vigorously assailed, the matter was fully re-examined and a report filed more than forty pages in length. As the result of this examination the Commission excluded from the order, for reasons set out at length in the report, petroleum and petroleum products, but reaffirmed its finding of undue prejudice as to other commodities.

This report fully analyzes the contentions of the respective parties, gives place to, and makes allowances for, the factors insisted upon by the respective sides, makes a more full and exhaustive analysis of the history of the ports, the business done at and through them, the controlling considerations which move the business through the respective ports, and bearing upon the practical effect on the ports of the rate structure condemned by it, finds "the testimony leaves little doubt that the differentials prescribed in the original report, or even smaller differentials on most of the commodities, would in time divert to the Texas ports a substantial portion of most of the commodities having origin or destination in the affected territory that are now moving through New Orleans." 128 I. C. C. 366.

Again, on page 369, it finds: "A port is neither the destination nor the origin of traffic passing through it. It levies toll on the traffic, in substantially the same manner as do common carriers, in its charges for use of its facilities in the transfer of traffic between the rail and water carriers. Healthy competition is no less important between ports than between rail or water carriers. There is, however, a limit beyond which the disregard by rail carriers of the geographical advan-

tages of one port in favor of another will impair rather than promote healthy competition between the ports. There is much ground for believing that a policy of port equalization, if carried beyond reasonable limits, has the effect of strengthening unduly, at the expense of others, those ports which by reason of natural or acquired advantages have attained commanding positions in the export and import trade. Such a policy also encourages waste in rail transportation."

On page 379 it states the questions for decision thus: "The essential questions which we must here determine are these: (1) Whether there is a disregard of cost of service to the ports which results in giving New Orleans for the same charge service which costs materially more than the service to the Texas ports; (2) If so, whether this disregard of cost of service is a preference of New Orleans over the Texas ports in the sense that the same carriers are responsible for the rates in both cases; and (3) if so, whether this preference is undue, that is to say, whether it causes advantage to New Orleans to the substantial injury of the Texas ports," and, after considering these questions, it, on page 388, makes the following finding: "We find that the present parity of rates as between the Texas and Louisiana ports results in substantially greater service for the same rate to the Louisiana ports than to the Texas ports from and to interior points from which the short-line distance to New Orleans exceeds that to Galveston by more than approximately 25 per cent.; that this parity of rates does not result in substantial injury to the Texas ports in respect of petroleum and its products, but does result in substantial injury to and prejudice against the Texas ports in respect of the other commodities considered, * * * and that the competition relied upon by defendants herein is no justification for the resulting prejudice from and to the interior points referred to."

When the matter was again heard on the protest against excluding the Texas & Pacific and L. R. & N. from the terms of the order, the Commission reaffirmed these findings of undue prejudice and preference, and upon full consideration found the Texas & Pacific and L. R. & N. parties to it.

In the present suits the state of Louisiana, New Orleans interests, certain interests in Kansas City, Oklahoma, and Nebraska intervened on the side of complainants, while those representing Galveston and other Texas ports, and the carriers involved in the order other than complainants, intervened on the side of the Commission.

The cases were fully briefed, and it was made plainly to appear that though the record was voluminous, and the parties concerned in its making had ranged over a wide field, and their respective contentions before the Commission and before this court had taken many forms, reduced to its final analysis the case presents but two questions for decision.

(1) Whether the Commission had evidence before it sufficient to support its finding of fact that under the circumstances disclosed by the evidence the maintenance of through rates, import, export, and coastwise, to New Orleans the same as to the Texas ports, in the face of a considerably longer distance haul to New Orleans, constituted an undue preference of the port of New Orleans and an undue prejudice to the Texas ports, and

(2) Whether, though petitioners do not reach the Texas ports with their rails, they could be guilty of discrimination against such ports, because of their participation in joint through rates to such ports.

It is true that in addition to these questions petitioners and interveners on that side argued with some apparent earnestness certain subordinate contentions: (1) That the orders of the Commission constitute a preference of the ports of Texas as against the ports of Louisiana in violation of section 9, art. 1, cl. 6, of the Constitution of the United States; (2) that the effect of the Commission's orders is to deprive petitioners of their long haul contrary to the provisions of paragraph 4, § 15, Interstate Commerce Act, as amended, 49 USCA § 15, par. 4; (3) that they operate to take from petitioners a profitable business which they can ill afford to lose, and that this result is achieved by the Commission not by properly exercising its power to prevent section 3 (as amended [49 USCA § 3]) discrimination but as the result of an arbitrary design on the part of the Commission to offset, by a scheme of rates commercial disadvantages to which the Texas ports are subject, and thereby divert to those ports and the carriers competing with petitioners, traffic to which petitioners and the port of New Orleans are legitimately entitled.

Of these three contentions it is sufficient to say of the first, that the invocation of section 9, art. 1, to prevent a merely incidental result upon the ports of a state of an act or regulation of the Commission has never re-

ceived the sanction of the courts, and further, that since the orders of the Commission are based upon its findings that the prohibited rates constitute an unjust preference of the Louisiana ports over the Texas ports, it follows that if the order is supported by evidence the order does not give, but, in fact, prohibits a preference of the ports of one state over those of another; while if the finding is unsupported by the evidence, the order will fall not because it effects a preference of one port over another, but because the facts which authorize the exertion of the power are wanting.

■ Of the second contention, that the effect of the order is to require petitioners to short haul themselves, it is sufficient to say that the Commission is not undertaking, by the orders in question, to establish or prescribe through rates, and further, that it does not undertake to fix or establish routes at all, but leaves all previously existing lines open to be selected by the shipper and pursued by the carrier as before, nothing being aimed at in the order except the relation of the rates in question, and the increase to a proper parity measured by the distance and other conditions of the New Orleans rate over the Texas rate, while the third is completely answered by the answer to the two main questions.

For if the record supports the Commission's finding of fact as to the existence of undue prejudice and preference, and if the petitioning carriers are parties to that undue prejudice and preference, it becomes the duty of the carriers to desist from the practices which brought this about, and the obligation of the Commission to compel them to do so, and whether the result of this lawful order of the Commission is to deprive a carrier of business, or to equalize and overcome commercial disadvantages is wholly immaterial. While on the other hand, if the order is not supported by the evidence, then it is void and must fall, wholly irrespective of the purpose which inspired it, and the result which it achieves.

■ Turning then to the controlling questions in the case, and taking them up in their inverse order, that is, considering first whether the New Orleans carriers can, notwithstanding the fact that their rails do not reach Texas ports, be held liable for undue prejudice, we think it entirely plain that they can be. St. Louis Southwestern Ry. v. United States, 245 U. S. 136, 38 S. Ct. 49, 62 L. Ed. 199; Central R. R. v. U. S., 257 U. S. 247, 42 S. Ct. 80, 66 L. Ed. 217; United States v. Illinois Central

R. Co., 263 U. S. 515, 44 S. Ct. 189, 68 L. Ed. 417; Chicago I. & L. v. United States, 270 U. S. 287, 46 S. Ct. 226, 70 L. Ed. 590.

■ It remains only to consider the first question; whether the Commission's finding of undue preference and prejudice may be set aside as unsupported by the evidence.

As appears from the three reports of the Commission, voluminous testimony was taken and a careful survey was made of the entire situation, not only as to the structure and relation of the rates in the territory affected, import, export and coastwise, but as to the structure and relation of the rates on local and domestic shipments as well as conditions obtaining at the ports as to steamship service, facilities for obtaining and handling freight, import and export, the progress and history of the ports through a long period of years, the territory and tonnage tributary to the ports, both naturally and by reason of rate structures and relations, and as a result of this survey, The Commission reached and announced in each of the three reports the conclusion that under the circumstances the maintenance of the same rate for the longer distance haul to New Orleans as to the Texas ports for the shorter distance, constituted an undue preference of that port and an undue prejudice to the others.

In the face of these findings on this record, the burden is upon petitioners and interveners on their side to make it very plain that the Commission's order is arbitrary, and without evidence, for the statute (49 USCA § 15) provides that "Whenever * * * the commission shall be of opinion that any individual or joint rate, fare, or charge whatsoever * * * is or will be unjust or unreasonable or unjustly discriminatory or unduly preferential or prejudicial * * * the commission is authorized * * * to determine and prescribe what will be the just and reasonable individual or joint rate, * * * and to make an order that the carrier or carriers shall cease and desist from such violation"—and it is the law that to the Commission, an administrative body informed and experienced, and not to the courts, the reaching of this opinion as a finding of fact is relegated.

■ Section 3 of the Interstate Commerce Act "forbids any undue or unreasonable preference or advantage in favor of any person, company, firm, corporation, or locality; what is such undue or unreasonable preference or advantage is a question not of law but of fact." Penna. Co. v. United States,

236 U. S. 351, 35 S. Ct. 370, 373, 59 L. Ed. 616.

"If the determination of the Commission finds substantial support in the evidence, the courts will not weigh the evidence nor consider the wisdom of the Commission's action." Chicago, R. I. & P. Ry. Co. v. United States, 274 U. S. 29, 47 S. Ct. 486, 488, 71 L. Ed. 911.

"It is not for courts to weigh the evidence introduced before the Commission, Western Paper Makers' Chem. Co. v. United States, 271 U. S. 268, 271, 46 S. Ct. 500, 70 L. Ed. 941; or to inquire into the soundness of the reasoning by which its conclusions are reached, Interstate Commerce Commission v. Illinois Central R. Co., 215 U. S. 452, 471, 30 S. Ct. 155, 54 L. Ed. 280; Skinner & Eddy Corporation v. United States, 249 U. S. 557, 562, 39 S. Ct. 375, 63 L. Ed. 772; or to question the wisdom of regulations which it prescribes, United States v. New River Co., 265 U. S. 533, 542, 44 S. Ct. 610, 68 L. Ed. 1165. These are matters left by Congress to the administrative 'tribunal appointed by law and informed by experience.' Ill. Central R. R. Co. v. Interstate Com. Comm., 206 U. S. 441, 454, 27 S. Ct. 700, 704, 51 L. Ed. 1128." Assigned Car Cases, 274 U. S. 574, 47 S. Ct. 727, 733, 71 L. Ed. 1204.

"A tribunal such as the Interstate Commerce Commission, expert in matters of rate regulation, may be presumed to be able to draw inferences that are not obvious to others." O'Keefe v. United States, 240 U. S. 294, 36 S. Ct. 313, 317, 60 L. Ed. 651.

In short, the Interstate Commerce Commission, under the powers which it now has, is the body to determine rate questions and rate relationships, and, in the face of the voluminous record and its careful examination and consideration by the Commission, it will not do for persons complaining of it to urge, as these do, that the Commission gave too much weight to distance, and not enough to other considerations; because it is for the Commission, and not for the court, to say what weight should be given to the admissible factors, all of which were presented to the Commission for its consideration, and were by it carefully examined and reviewed.

Nor can it be contended in the face of this record, and especially in the face of the contention of the petitioners, that, if they are not allowed to haul longer distances for the same rate that other carriers charge to the Texas ports for shorter distances, they will lose much of the business which they now have; that this structure of rates which the Commission has condemned has not created a preference in favor of New Orleans and a prejudice against the Texas ports.

In short, it seems plain to us that where the Commission has in a painstaking and careful way regarded and considered all the facts and circumstances developed in this voluminous record, and has in its order, with a due regard to those facts and circumstances, provided for the abolition not of all the discrimination, but only of that part of it which it finds to be undue by allowing the rates to New Orleans, where they do not exceed 25 per cent. of the distance from Galveston, to still remain the same as to Galveston, that this court has no authority to substitute its own administrative judgment as to how much more or how much less distance would be undue in a case of this kind, full as it was of facts bearing upon the creation and balancing of rate structures and the relations of rates, for that of the Commission, informed, equipped and authorized to discharge that function.

It is therefore our opinion, and we find, that plaintiffs' bills are without equity, and should be dismissed.

FOSTER, Circuit Judge (dissenting).

The rates which the order of the commission changes have been in effect for years, notwithstanding which Galveston has held her own and Houston has grown immeasurably as a port. The other Texas ports are negligible except as to the movement of oil. This traffic is exempted from the order, a somewhat inconsistent ruling. No doubt, as affecting a division of rates, a longer haul constitutes additional service to be paid for, but as affecting a shipper seeking to move his goods to and from the seaboard within reasonable limits, which do not seem to be exceeded in this case, it is immaterial and hardly to be considered service. It is evident that the Commission did not base its order merely on the additional length of haul, but took into consideration the superior natural advantages of New Orleans, and its greater facilities as a port. It is conceded that the plaintiffs carry the import and export traffic at a profit and without any undue burden upon other traffic. On the other hand, it is reasonably certain that if forced to inaugurate higher export rates to New Orleans than to Texas ports, none of which they reach over their own lines, their revenues will suffer greatly through loss of tonnage. I fail to see how the plaintiffs can be guilty

cf undue preference to New Orleans, or undue prejudice to Texas ports by charging the same rate to both. The Commission was not authorized to equalize port advantages by an adjustment of rates. We have jurisdiction to review the order, and it should be set aside. Central R. R. Co. v. U. S., 257 U. S. 247, 42 S. Ct. 80, 66 L. Ed. 217. .

For these reasons, I respectfully dissent.