## STATE OF ALABAMA et al. v. UNITED STATES INTERSTATE COMMERCE COMMISSION et al.

### No. 613.

District Court, N. D. Alabama.

June 25, 1930.

Watkins, Asbill & Watkins, of Atlanta, Ga., for plaintiff.

W. N. McGehee, of Washington, D. C. (for Southern Ry. Co.), Frank W. Gwathmey and Elmer B. Collins, Sp. Asst. Attys. Gen., and E. M. Reidy, of Washington, D. C. (for Interstate Commerce Commission), for defendant.

Before BRYAN, Circuit Judge, and SIBLEY and BORAH, District Judges.

SIBLEY, District Judge.

The state of Alabama and the Alabama Public Service Commission brought suit to set aside and enjoin an order of the Interstate Commerce Commission dated October 3, 1927, modified December 22, 1927, whereby it was required that intrastate rates on fertilizers and fertilizer materials in Alabama should not be less for corresponding distances than those contemporaneously applied in interstate commerce as established under a previous order of the commission of July 19, 1926. The application for a preliminary injunction was heard before three judges and the injunction denied. This judgment was affirmed by the Supreme Court as involving no abuse of discretion. Alabama v. United States, 279 U. S. 229, 49 S. Ct. 266, 73 L. Ed. 642. The case has now been heard for final decree before three other judges, the original ones being all unable to act because of sickness or absence. The evidence is precisely the same as that dealt with on the preliminary hearing. We agree with each of the rulings made in the judgment refusing the preliminary injunction, which are, in general, to the effect that the plaintiffs had a full hearing before the Interstate Commerce Commission, that sufficient evidence supports the commission's findings that the Alabama state rates, which were, in general, lower than those then prescribed for interstate commerce

into and out of Alabama, would in future result in unjust discrimination against interstate commerce and in undue prejudice to persons and localities in interstate commerce, and that the state rates should, for remedy, be raised to conform; and that the establishment as a minimum for state rates of the interstate rates then in effect, which permitted no differential for joint route hauls, was within the power of the commission.

On May 26, 1924, the Alabama Public Service Commission set up a scale of fertilizer and fertilizer material rates which differentiated between single line and joint route hauls and were purposely made low in order to encourage agriculture. In October of that year the Interstate Commerce Commission instituted an inquiry into interstate rates on these commodities throughout the Southern Territory, and consolidated into it an inquiry started by the carriers respecting the Alabama state rates. In this latter the commission, by its order, stated that it would inquire "whether the Alabama rates cause or will cause any undue or unreasonable advantage, preference or prejudice between persons and localities in intrastate commerce on the one hand and in interstate and foreign commerce on the other; or any undue, unreasonable and unjust discrimination against interstate and foreign commerce; and what rates, maximum or minimum, or maximum and minimum, shall be prescribed to remove the same if found to exist." This was a paraphrase of section 13 (4) of the Interstate Commerce Act, as amended (49 USCA § 13(4), though the section was not mentioned. The state of Alabama and its Public Service Commission were served as required by the section, and participated in the hearings. The interstate rates were found to be varying and inconsistent, and as a maximum for interstate commerce a distance scale was prescribed, without differential for joint hauls, by the order of July 19, 1926. A specific formal finding was then made that the Alabama intrastate rates, being on a lower basis than the corresponding interstate rates then prescribed, would work undue discrimination against interstate commerce, and undue prejudice to persons and localities involved therein. But no order for conformity was then entered because of the expressed expectation that this and other commissions would voluntarily revise their rates. The Alabama Commission did not alter its rates, and on motion and notice the matter was reopened by the Interstate Commerce Commission and the order

now complained of was, without further evidence or hearing, entered. The complaint by the carriers against the Alabama rates was expressly made under section 13 of the Interstate Commerce Act, and authorized by it, though no express reference was made to the section in the commission's order. The law needs no more to be pleaded in proceedings by or before the commission than before a court. Chicago, R. I. & Pacific Rwy. Co. v. United States, 274 U. S. 29, 47 S. Ct. 486, 71 L. Ed. 911. What was proposed to be done was plainly and fully stated in the order and all that has been done was within the proposals. The consolidation of the Alabama proceeding with the general interstate rate investigation made the state and its commission a party to the latter, but did not alter the purpose or effect of the former. It is true the establishment of new interstate rates affected the question of discrimination by the Alabama rates, but did not alter its general substance or require a de novo hearing. The finding against the Alabama rates was like a verdict with judgment not immediately pronounced. No additional hearing was necessary in order that the judgment might be later entered. There appears no want of full hearing in reaching the order thus finally made. Georgia Public Service Commission v. United States (D. C.) 39 F.(2d) 167.

While some of the Alabama rates did not, perhaps, differ sufficiently from the interstate rates established to make a substantial burden on or discrimination against interstate commerce, others of them, considering the volume of this traffic and the close competition in it, did so. These rates were closely related to one another as a system. In determining how the discrimination and burden that was found to exist should be removed, the commission could decide whether it was sufficient to alter only some of the rates, or necessary to alter the system. We do not think the decision to do the latter was arbitrary and unreasonable.

The dropping from the interstate scale, and by consequence from the state rates, of the differential in favor of joint hauls, is attacked as arbitrary and inconsistent with the retention of it in the rates on crushed stone, sand, and gravel, which we have upheld in the companion case to this of Georgia Public Service Commission v. United States, 42 F.(2d) 467. Whether this differential should be retained on fertilizers and fertilizer materials was fully discussed in the hearing in this case before the commission. From common knowledge it is apparent that as between a

single line haul of a car of freight and a joint line haul for the same distance, there is some additional cost in the latter, because more clerical work in rebilling, more accounting in dividing the freight charge, and an additional switching movement, with probable consequent delay of the car, are all involved. But whether the additional compensation for this is worth the trouble of dealing with it from a carrier's standpoint, or whether the movement of business will be embarrassed by it from the shipper's standpoint, are matters for the exercise of informed judgment. The commission decided that in the case of crushed stone and gravel, the rate itself being of the lowest, the differential was a substantial part of the carrier's pay and should be maintained. In the case of fertilizers the rate is about two and a half times as great, and the additional cost of handling the car a less substantial proportion of it. The differential had already been abandoned in the higher classes of freight, Southern Class Rates, 100 I. C. C. 627, 628, and compensated on the average by slightly increased rates. We cannot say it is arbitrary to decide that this is the proper course to pursue in reference to fertilizers, which occupy an intermediate place.

We therefore think the order within the power of the commission and supported by evidence, and that it should not be set aside.