PENN ANTHRACITE MINING CO. v. DELAWARE & H. R. CORPORATION et al.

CHRISTIAN FEIGENSPAN v. SAME.

Nos. 3683, 3684.

District Court, M. D. Pennsylvania.

Oct. 20, 1936.

William A. Skinner, of Scranton, Pa., and Edwin A. Lucas, of Drinker, Biddle & Reath, of Philadelphia, Pa., for plaintiffs.

Carleton W. Meyer, of New York City, and Paul Bedford, of Wilkes-Barre, Pa., for defendant Delaware & Hudson Co.

A. H. Elder, of New York City, and O'Malley, Hill, Harris & Harris, of Scranton, Pa., for defendant Central Railroad Co.

WATSON, District Judge.

These two cases are similar in their pleadings, were tried together, and turn upon the same questions.

Plaintiffs instituted proceedings against defendants before the Interstate Commerce Commission, complaining of freight rates maintained by defendants for the transportation of anthracite coal in carloads from Von Storch Colliery, at Green Ridge, in Scranton, Pa., to Newark, N. J., alleging that these rates were, are, and would be, unreasonable, and unduly prejudicial to plaintiffs and preferential to their competitors, in violation of sections 1 and 3 of the Interstate Commerce Act (49 U.S.C.A. §§ 1, 3). They asked that the Commission order the defendants to desist from the violation, establish reasonable and just rates, and make a reparations order awarding damages, and such other order or orders as the Commission considers proper.

Hearing was had before an Examiner, who made a tentative report, in which he found that the rates charged were unreasonable in violation of section 1, and recommended an award of reparations. Exceptions were filed to this report, and, after oral argument before Division 3 of the Interstate Commerce Commission, this body refused to follow the recommendation of the Examiner, found the rates not unreasonable or otherwise unlawful, and dismissed the complaint. Upon reconsideration by the full Commission, Division 3 was reversed, the Commission found the rates assailed unreasonable, and found that rates $2.39 on prepared sizes and $2.27 on smaller sizes to be reasonable. Reparations were awarded, and plaintiffs were instructed to comply with rule 5. Plaintiffs filed tabulations of all shipments in connection with which reparation was due, and in accordance therewith the Commission awarded the Feigenspan Corporation $4,152.08, with interest, and the Penn Anthracite Mining Company $6,979.23, with interest. Defendants refused to pay these awards, and plaintiffs instituted these actions under section 16, paragraph 2 of the Interstate Commerce Act (49 U.S.C.A. § 16, par. 2).

At the trial, plaintiffs introduced the report of Division 3 of the Interstate Commerce Commission dismissing its complaint; the report of the Commission on reconsideration reversing Division 3 and finding the rates unreasonable; the Commission's amendatory order for the payment of damages, and statements of individual shipments for computation of interest; and a stipulation that the reports and orders of the Commission were duly served upon defendants. Plaintiffs then rested. Defendants introduced all the testimony submitted at the hearing before the Commission and an order of the Commission in another proceeding. Defendants then offered expert testimony as to the reasonableness of the rates. This evidence was excluded.

After the evidence was all in, and plaintiffs and defendants had rested, both plaintiffs and defendants made requests for binding instructions. Plaintiffs' request was granted, and ruling on the defendants' request was reserved for disposition at a later date. Plaintiffs also made a request for counsel fees as provided for in section 8 of the Interstate Commerce Act (49 U.S.C.A. § 8). Verdicts were entered for plaintiff in No. 3683, Penn Anthracite Mining Company v. The Delaware & Hudson Railroad Corporation and the Central Railroad Company of New Jersey, jointly and severally, in the sum of $8,118.58; and in favor of plaintiff in No. 3684, Christian Feigenspan, a corporation, against defendants, the Delaware & Hudson Railroad Corporation and the Central Railroad Company of New Jersey, jointly and severally, in the sum of $4,367.56. These sums represented the principal amounts awarded by the Interstate Commerce Commission, plus interest to the date of the verdicts.

Defendants duly filed motions for a new trial and for judgment non obstante veredicto. These motions, together with defendants' request for binding instructions, are now before the court for disposition.

■ Under the decision in Slocum v. New York Life Insurance Co. (1913) 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879, Ann.Cas. 1914D, 1029. I cannot consider the motion for judgment, non obstante veredicto as such, but shall dispose of the point raised by that motion in deciding whether defendants' request for binding instructions should have been granted. This I consider to be in conformity with the procedure sanctioned by the Supreme Court in Baltimore & Carolina Line, Inc., v. Redman (1935) 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636.

Defendants' motion for a new trial and defendants' request for binding instructions, the ruling upon which was reserved, raised the following questions: (1) Did the court err in overruling defendants' objections to the admission in evidence of the report and orders of the Interstate Commerce Commission, for the reason that said report and orders do not contain the findings of fact required by section 14 (1) of the Interstate Commerce Act (49 U.S. C.A. § 14 (1), and are therefore void? (2) Did the court err in overruling defendants' objection to the admission of the Commission's report and orders, for the reason that they disclose on their face an error of law in that they recite that certain rates were "unreasonable" and purport to award reparation under section 1, whereas, the report shows that the real grievance was discrimination and the real findings of the Commission were findings of discrimination under section 3 of the Interstate Commerce Act (49 U.S.C.A. § 3)? (3) Did the court err in overruling defendants' motion to strike from the record the Commission's report and orders, which motion was made upon the ground that said report and orders were made by the Interstate Commerce Commission without proper or sufficient evidence? (d) Did the court err in sustaining plaintiffs' objection to the testimony offered by defendants as to the reasonableness of the rates in question? These questions will be discussed in the order in which they are referred to.

Are the report and orders of the Interstate Commerce Commission void for the reason that they do not contain findings of fact as required by section 14 (1) of the Interstate Commerce Act (49 U.S.C.A. § 14 (1)?.

Section 14 (1) of the Interstate Commerce Act provides: "Whenever an investigation shall be made by said commission, it shall be its duty to make a report in writing in respect thereto, which shall state the conclusions of the commission, together with its decision, order, or requirement in the premises; and in case damages are awarded such report shall include the findings of fact on which the award is made."

■ It should be noted that where, as in the present case, there are two or more reports of the Commission in the same proceedings, and the later reports show affirmatively that they are supplemental to the original report, they should be read together and the facts contained in the early reports should be considered as part of the final report unless expressly repudiated. Meeker v. Lehigh Valley R. Co. (1915) 236 U.S. 412, 35 S.Ct. 328, 59 L.Ed. 644, Ann. Cas.1916B, 691.

The report of the Third Division consists of five pages and the supplemental report by the full Commission consists of three pages of discussion and findings of fact devoted to the questions of the "unreasonableness" and the "unduly prejudicial" nature of the rates charged. In addition, the Commission filed two supplemental reports devoted to the computation of damages after plaintiffs' tabulations were filed.

It will be noted that section 14 (1) above provides that in case the Commission awards damages its "report 'shall include the findings of fact on which the award is made."

The Supreme Court of the United States in the cases of Meeker v. Lehigh Valley R. Co., 236 U.S. 412, 35 S.Ct. 328, 59 L.Ed. 644, Ann.Cas.1916B, 691; Mills v. Lehigh Valley R. Co., 238 U.S. 473, 35 S.Ct. 888, 890, 59 L.Ed. 1414, and Meeker v. Lehigh Valley R. Co., 236 U.S. 434, 35 S.Ct. 337, 59 L.Ed. 659, interpreted this provision and set forth the facts which must be included in the Commission's report. The Mills Case was very similar to the case at bar. As in the present case, the Commission issued two reports, the first dealing with the reasonableness of the rate for the future, and the second dealing with reparations. This reparation order was the basis of a court proceeding to collect the damages assessed by the Commission. In the Mills Case the Supreme Court, in the opinion, said:

"The grounds of the ruling of the court below are: first, that there were no sufficient findings of fact in the reports of the Commission, as required by the statute; and, second, that the plaintiffs had failed to present any evidence which made out a prima facie case of damage sustained. That is, it is said that if the statements in the first report of the Commission could be regarded as findings of fact within the meaning of the statute so as to make them prima facie evidence of the facts found, they were not sufficient to support the plaintiffs' claim; and that there were no facts found in the second report which entitled the plaintiffs to go to the jury.

"The fundamental question thus presented, with respect to the effect of the Commission's reports and orders, has recently been determined in Meeker & Co. v. Lehigh Valley R. R. Co., 236 U.S. 412, 35 S.Ct. 328, 59 L.Ed. 644 [Ann.Cas.1916B, 691], and, in the light of the conclusion there reached, little need now be said. In dealing with the objection that the reports and orders of the Commission then before the court did not contain any findings of fact, or at least not enough to sustain an award of damages, it was held that the statute does not require a statement of the evidential or primary facts. The court said: 'We think this is not the right view of the statute, and that what it requires is a finding of the ultimate facts,—a finding which, as applied to the present case, would

disclose (1) the relation of the parties as shipper and carrier in interstate commerce; (2) the character and amount of the traffic out of which the claims arose; (3) the rates paid by the shipper for the service rendered, and whether they were according to the established tariff; (4) whether and in what way unjust discrimination was practiced against the shipper; * * * (5) whether, if there was unjust discrimination, the shipper was injured thereby, and, if so, the amount of his damages; (6) whether the rate collected from the shipper * * * was excessive and unreasonable, and, if so, what would have been a reasonable rate for the service; and (7) whether, if the rate was excessive and unreasonable, the shipper was injured thereby, and, if so, the amount of his' damages.'"

Then follows, in this opinion, the entire second report of the Commission, which included the following: "We now find that the rate of $2 per gross ton, assessed and collected by the defendants on the shipments giving rise to complaint, was unjust and unreasonable to the extent that it exceeded the subsequently established rate of $1.45 per gross ton. Complainant is entitled to reparation on all shipments moving within the period of the statute of limitations. Detroit Chemical Works v. N. C. Ry. Co., 13 I.C.C.Rep. 357; Detroit Chemical Works v. Erie R. R. Co., 13 I.C.C.Rep. 363."

After quoting the second report by the Commission, the opinion continues: "This report, it will be observed, shows the relation of the parties as shipper and carrier in interstate commerce; the general character of the traffic involved and the amount of the shipment with respect to which reparation was claimed; the determination that the rate exacted (which was specified) was unjust and unreasonable to the extent that it exceeded the established rate (also specified); and, further, the determination that the companies respectively should pay a stated amount 'as reparation for the collection of unreasonable charges' on the quantities mentioned. It is at once apparent that these findings meet the test laid down in the Meeker Case, unless it can be said that they were insufficient as to the amount of damages suffered. Thus, there would seem to be no room for question that the finding that the rate charged was unreasonable is a sufficient finding. The Commission stated: 'We now find that the rate of $2 per gross ton, assessed and collected by the defendants on the ship-

ments giving rise to complaint, was unjust and unreasonable to the extent that it exceeded the subsequently established rate of $1.45 per gross ton.' It is insisted that, in view of the provisions of the first order, and the Commission's description of it in the second report, the essential basis of the ruling was not the inherent reasonableness of the rate established, but its relation to the rate on a competitive commodity. We think, however, that the specific finding in the second report that the rate exacted 'was unjust and unreasonable' to the extent specified was a finding as to the ultimate fact of unreasonableness which should be taken precisely as made. The finding in this respect is substantially the same as that in the second Meeker Case (236 U.S. 434, 435, 436, 35 S.Ct. 337, 59 L.Ed. 659)."

With the test laid down in the Mills Case and the authorities cited therein, I shall turn to the findings of the Commission in the present cases.

After several pages of discussion and findings in regard to specific facts brought out by the plaintiffs, the Commission in its supplemental report, on reconsideration, closed with the following finding at page 223: "Upon reconsideration we find that the rates assailed were, are, and for the future will be, unreasonable to the extent that they exceeded, exceed, or may exceed $2.39 on prepared sizes and $2.27 on the smaller sizes. We further find that shipments were made as described; that complainant Christian Feigenspan paid and bore the charges on those made prior to October 1, 1931, and complainant Penn Anthracite Mining Company on those made on and after that date; that complainants were thereby damaged in the amount that the respective charges paid on the shipments exceeded those that would have accrued at the rates herein found reasonable; and that they are entitled to reparation, with interest. Complainants should comply with Rule V. of the Rules of Practice."

As already pointed out, both plaintiffs filed reparation statements in accordance with rule 5. These statements contained all the essential details making up plaintiffs' respective damage claims. They showed the date of shipment, date of delivery, date charges were paid, car initials and numbers, origin, destination, route, commodity, weight, the freight charges paid, the freight charges on the basis found reasonable by the Commission and the dif-

ference between the last two, or, in other words, the reparation.

Following the filing of these rule 5 statements, the Commission entered its order in which the following appears: "It appearing, That on March 6, 1934, the Commission, entered its report in the above-entitled proceeding, which report is hereby referred to and made a part hereof, and this proceeding now coming on for further consideration on the question of reparation and the parties having filed agreed statements with respect to the shipments in question, showing among other things, the dates on which payment of the charges assailed was made; we find that complainants shown in the following table are entitled to awards of reparation from the defendants named below in the amounts set opposite their respective names, with interest:"

The actual awards followed.

Without considering the many specific findings of fact contained in the two reports of the Commission in the present cases, and looking only at the matter contained in the above quotations from the reports, coupled with the rule 5 statements, it appears that there was a full compliance with the requirements set forth in the Meeker and Mills Cases. These reports show the relationship of the parties; the character and amount of the traffic out of which the claims arise; the rates paid by the shipper for the service rendered under the established tariffs; whether the rate collected by the carrier was unreasonable, and, if so, what would have been a reasonable rate for the service; and the amounts of damage sustained by the respective plaintiffs.

Defendants cite many cases decided by the Supreme Court of the United States in which it was said that the Commission must make "basic" findings of fact and struck down reports of the Commission because they did not contain these so-called "basic" findings. In none of the cases, however, were the Meeker and Mills Cases criticized or overruled, and, in none of them was the requirement contained in section 14 (1) so definitely determined as in the above cases.

■ In my opinion, the reports and orders of the Commission in the present cases contain sufficient findings of fact to comply with section 14 (1).

A more difficult question is whether the facts found and the evidence upon which

they were based are such as to justify the conclusion that the rate was "unreasonable." This is raised in both the second and third questions, and I shall discuss these questions together.

It is defendants' position that the evidence before the Commission merely tended to show that the rates were unduly prejudicial in violation of section 3 of the act. If this is true, then the reparations order of the Commission is void, for the reason that the measure of damages is different where the finding is "undue prejudice" than it is when the finding is that the rate was "unreasonable."

The evidence before the Commission was so voluminous and the exhibits so many and complicated that it would be impossible to set out with any completeness the evidence before the Commission.

It must be kept in mind that the courts, in deciding questions of this kind, need not determine whether the Commission's conclusions were wise, nor need they weigh the evidence presented. The Commission enjoys full authority to select the evidence which it desires to believe, and may draw such conclusions therefrom as are consistent with law. The courts exercise merely a supervisory capacity in reviewing decisions of the Commission. It is our function to protect litigants from arbitrary and capricious exercise of authority. If the evidence before the Commission is competent and lends reason to the conclusions of that body, the courts will not interfere. New England Divisions Case, 261 U.S. 184, 43 S.Ct. 270, 67 L.Ed. 605; Chicago, Rock Island & Pacific R. Co. v. U. S., 274 U.S. 29, 47 S.Ct. 486, 71 L.Ed. 911; Virginian R. Co. v. U. S., 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463.

From the evidence before the Commission it is quite apparent that the chief basis for the Commission's findings was the evidence of the fact that the rates here complained of compared unfavorably with rates enjoyed by most of the shippers for substantially the same service. It was not shown that the rate of $2.52 was yielding an unreasonably high revenue. No attempt was made on the part of the plaintiffs to show that the basic rates established in 1915 have become excessive. Thus, the question is, whether evidence showing that plaintiffs' rates are higher than the rates generally charged for the same service is sufficient upon which to base a conclusion that the rates were unreasonable and in violation of section 1. In cases of this type, in which only one rate is attacked by a single shipper, the Commission cannot be expected to go into the complicated questions involved in a determination whether the basic rates on anthracite shipments are now fair and reasonable. If every time a single shipper complained against a rate it were necessary for him to produce evidence going to this matter, the expense would be so great that it would be impossible for any ordinary shipper to get his case before the Commission. For these reasons it is sufficient that the evidence before the Commission reveal the unfairness and unreasonableness of the rate as compared with other rates for the same service.

In Virginian R. Co. v. U. S., 272 U.S. 658, 47 S.Ct. 222, 224, 71 L.Ed. 463, the Supreme Court, speaking through Mr. Justice Brandeis, said: "To consider the weight of the evidence before the Commission, the soundness of the reasoning by which its conclusions were reached, or whether the findings are consistent with those made by it in other cases, is beyond our province. * * * This court has no concern with the correctness of the Commission's reasoning, with the soundness of its conclusions, or with the alleged inconsistency with findings made in other proceedings before it. Interstate Commerce Commission v. Union Pacific R. R. Co., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308. It was shown that a huge coal traffic moves from this territory, under like operating conditions, at the blanket rates which were voluntarily established by the other carriers to serve mines similarly located. This fact, and much else in the voluminous record, afford substantive evidence to support the finding that the existing rates are unreasonable, and that those which the order directs are reasonable."

In Montrose Oil Refining Co. v. St. Louis-San Francisco R. Co. (D.C.) 25 F. (2d) 750, affirmed (C.C.A.) 25 F.(2d) 755, certiorari denied, 277 U.S. 598, 48 S.Ct. 560, 72 L.Ed. 1007, it was held that in determining whether a particular rate is reasonable or not, comparison of existing charges made under similar conditions may be made, especially where, as here, none of the rates are attacked as being confiscatory. The question whether rates are just and reasonable is sometimes a relative one and may be tested by a comparison of other

rates for a similar service. Interstate Commerce Commission v. East Tennessee, V. & G. R. Co. (C.C.) 85 F. 107, affirmed (C.C.A.1899) 99 F. 52, reversed on other grounds (1901) 181 U.S. 1, 21 S.Ct. 516, 45 L.Ed. 719; Interstate Commerce Commission v. Nashville C. & St. L. R. Co. (C.C.A.) 120 F. 934, appeal dismissed (1904) 195 U.S. 638, 25 S.Ct. 789, 49 L. Ed. 356.

Defendants make much of the fact that the Commission's report revealed that it was based in part on a desire to "line up" plaintiffs' rates with those established in the Richmond County Coal Merchants Ass'n Case, 101 I.C.C. 154 and Id., 183 I. C.C. 705, and the Central New Jersey Coal Exchange Case, 167 I.C.C. 723. In those cases, the Commission established the $2.39 rate for a substantially similar service to many competitors of both plaintiffs, especially the Feigenspan Corporation. The determination of the Commission was based on substantial evidence of unreasonableness and the discussion contained in the Commission's report discloses that it was on this evidence its finding that the rates were unreasonable was based.

■ The remaining question is, whether the court erred in refusing to allow the defendants to introduce evidence in contradiction of the Commission's finding that the rates assailed were unreasonable. The defendants' contention that the court did err is based, first, on the provision in section 16 (2) of the Interstate Commerce Act (49 U.S.C.A. § 16 (2) that the findings and orders of the Commission in cases awarding reparations shall be merely prima facie evidence of the facts therein stated, and, second, on the Seventh Amendment to the Constitution, which provides that in suits at common law, the right of trial by jury shall be preserved.

Conceding that the Commission's findings on the question of reasonableness are binding on the courts so far as future rates are concerned, defendants contend that the question must be tried de novo where, as here, the action at law is brought for the purpose of collecting damages because of past unreasonable rates. Otherwise, defendants say, a fact necessary to the determination of liability would be taken from the jury.

This precise question was recently decided by the Circuit Court of Appeals for the Second Circuit in the case of Glens Falls Portland Cement Co. v. Delaware & Hudson Co. (1933), 66 F.(2d) 490, 493, and certiorari was denied 290 U.S. 697, 54 S.Ct. 132, 78 L.Ed. 599. In that case, we find full and logical answers to every question raised by defendants herein. There, as here, plaintiffs introduced copies of the Commission's report and reparations order, made proof of service of the same, and, after introducing matter going to the interest due on the Commission's award, rested. Defendant then offered expert testimony as to the reasonableness of the rates. This evidence was excluded. On appeal, the admissibility of this evidence was the principal point of controversy. The opinion of the court clearly states the law and thoroughly reviews the authorities. In the opinion, the court said:

"The Interstate Commerce Act provides that all charges for service must be just and reasonable, and declares every unreasonable charge to be unlawful. Section 1 (5), 49 U.S.C.A. § 1 (5). It imposes upon carriers liability for the full amount of damages sustained by any person in consequence of any violation of its provisions. Section 8, 49 U.S.C.A. § 8. Any person claiming to be so damaged may either make complaint to the Commission or may bring suit for damages in a District Court. Section 9, 49 U.S.C.A. § 9. Complaints to the Commission for reparation may be made under section 13 (1), 49 U.S.C.A. § 13 (1), and, if damages are awarded, the Commission's report shall include the findings of fact upon which the award is made. Section 14 (1), 49 U.S.C.A. § 14(1). If the Commission shall determine that the complainant is entitled to damages, it shall make an order directing the carrier to pay him on or before a named day the sum awarded. Section 16(1), 49 U.S.C.A. § 16 (1). If the order is not complied with, suit may be brought under section 16 (2), 49 U.S.C.A. § 16 (2). This provides also that: 'Such suit in the district court of the United States shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the commission shall be prima facie evidence of the facts therein stated. * * *'

"Paragraph 12 of section 16, 49 U.S. C.A. § 16 (12), prescribes the procedure for enforcement of 'any order of the commission other than for the payment of money.'

"Relying upon the statutory declaration that the findings and order of the Commis-

sion shall be 'prima facie evidence of the facts therein stated,' and contending that to give them any greater effect would deprive the defendants of rights guaranteed by the Constitution, they argue that the judgment must be reversed because the court rejected proof on the issue of the reasonableness of the rates collected from the cement company. Verbally the argument based on the above-quoted language of section 16 (2) is strong. But an equally strong argument can be based on section 9, 49 U.S.C.A. § 9 (reinforced by section 22, 49 U.S.C.A. § 22, as to the preservation of existing remedies), that a shipper may elect between complaining to the Commission and suing for damages in a court of law; yet it is clearly established that, if the dispute involves an administrative matter, such as the unreasonableness of an established rate, the shipper has no option, but must resort to the Commission. Tex. & Pac. Ry. Co. v. Abilene Cotton Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, 9 Ann.Cas. 1075, is the pioneer case. Many of the subsequent authorities are cited and discussed in the U. S. Navigation Co. v. Cunard S. S. Co., 50 F. (2d) 83 (C.C.A.2), affirmed 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408. See, also, Baltimore & Ohio R. Co. v. Brady, 288 U.S. 448, 456, 53 S.Ct. 441, 77 L.Ed. 888. Similarly, despite the language of section 16 (2), neither the shipper nor the carrier may attack the administrative decision except on the ground that there was no evidence before the Commission to support it. At least, such we understand to be the principle announced in an elaborate dictum in Mitchell Coal & Coke Co. v. Pennsylvania R. R. Co., 230 U.S. 247, 33 S.Ct. 916, 57 L.Ed. 1472. At page 257 of 230 U.S., 33 S.Ct. 916, 921, 57 L.Ed. 1472, Mr. Justice Lamar said that, where the suit is based upon unreasonable charges or unreasonable practices, 'the whole scope of the statute shows that it was intended that the Commission and not the courts should pass upon that administrative question,' and upon the following page the opinion continues:

" '* * * Such orders, so far as they are administrative, are conclusive, whether they relate to past or present rates, and can be given general and uniform operation, since all shippers who have been or may be affected by the rate can take advantage of the ruling and avail themselves of the reparation order. They are quasi judicial and only prima facie correct in so far as they determine the fact and amount of damage,—as to which, since it involves the payment of money and taking of property, the carrier is, by § 16 of the act, given its day in court and the right to a judicial hearing (March 2, 1889) 25 Stat. at L. 859, chap. 382, [as amended] U.S.Comp. Stat.Supp.1911, p. 1303 [see 49 U.S.C.A. § 16]).'

"In South Carolina Asparagus Growers' Ass'n v. Southern Ry. Co., 64 F.(2d) 419 (C.C.A.4), the Mitchell Case is cited as authority for the proposition that the Commission's administrative finding, fixing the extent to which the rates charged were unreasonable, is binding upon the courts. Such also was the holding in Lehigh Valley R. Co. v. Meeker, 211 F. 785, 794 (C.C.A.3), reversed on other grounds in 236 U. S. 412, 35 S.Ct. 328, 59 L.Ed. 644, Ann. Cas.1916B, 691, but the lower federal courts are not in unanimity upon this question. Cf. Atchison, T. & S. F. Ry. Co. v. Spiller, 246 F. 1, 21 (C.C.A.8), reversed on other grounds 253 U.S. 117, 40 S.Ct. 466, 64 L. Ed. 810; Blair v. Cleveland, C., C. & St. L. Ry. Co. (D.C.E.D.Ill.) 45 F.(2d) 792, 793.

"It is conceded by the appellants' argument that the Commission's decision upon the reasonableness of rates is conclusive in establishing rates for the future, but they contend that there is a difference as to decision respecting the reasonableness of rates collected in the past. While expressions may be found in the opinions which imply that a reparation award involves a 'quasi judicial' function as distinguished from the 'quasi legislative' function of fixing rates in futuro, we do not think they are to be taken as overruling the above-quoted statement in the Mitchell opinion that administrative orders are conclusive 'whether they relate to past or present rates.' One of the latest reparation cases in the Supreme Court is Adams v. Mills, 286 U.S. 397, 52 S.Ct. 589, 76 L.Ed. 1184. This concerned the practice of charging an unloading charge at the stockyards. As we read the opinion, the court discusses the case on the assumption that the Commission's decision that the practice complained of was unlawful was conclusive, if supported by evidence before the Commission, and so says at page 410 of 286 U.S., 52 S.Ct. 589, 76 L.Ed. 1184.

"The defendants were entitled to attack the Commission's administrative decision as unsupported by the evidence be-

740

fore the Commission, as was done in Spiller v. Atchison, T. & S. F. Ry. Co., 253 U. S. 117, 40 S.Ct. 466, 64 L.Ed. 810. But they did not do so. They sought only to introduce expert testimony to contradict the Commission's conclusion that the rates collected were unreasonable and hence unlawful. This, as we understand the law, they might not do. Accordingly the judgment appealed from must be affirmed."

The defendants contend that this court should not follow the decision in the Glens Falls Portland Cement Co. Case, but should follow the decision in Western New York & Pennsylvania R. Co. v. Penn Refining Co., 137 F. 343, which was decided by the Circuit Court of Appeals of the Third Circuit in 1905, and affirmed by the Supreme Court of the United States, 208 U.S. 208, 28 S.Ct. 268, 52 L.Ed. 456, in 1908. A careful study of that case does not reveal that the questions raised were in any respect similar to the question here. At the end of a lengthy opinion in which the record was found to be replete with error, the court paused to express its opinion that evidence going to the question of reasonableness was properly submitted to the jury under the statute then in existence. This, of course, was obiter dictum, since the judgment of the District Court was reversed on other grounds entirely unrelated to the question of the conclusiveness of the Commission's decision upon the reasonableness of rates. In affirming the Circuit Court, the Supreme Court made no reference to this question. In my opinion, the refusal by this court to allow the defendants to introduce evidence to contradict the Commission's conclusion that the rates were unreasonable was proper.

For the foregoing reasons, defendants' motions for judgment non obstante veredicto should be denied; the question reserved should be decided in favor of the plaintiffs, and a new trial should be refused.

Now, October 20, 1936, the motions for judgment non obstante veredicto are denied; the motions for directed verdicts, rulings upon which were reserved, are denied; the rules for new trial are discharged; new trials are refused, and judgments are directed to be entered on the verdicts. An attorney's fee of $2,000 is allowed in No. 3683, and an attorney's fee of $1,000 is allowed in No. 3684, to be taxed and collected as part of the costs.