70

Commonwealth of Pennsylvania, Department of Environmental Resources *v.* Carl L. Metzger, Appellant.

Argued September 10, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Richard H. Roesgen,* with him *McNerney, Page, Vanderlin & Hall,* for appellant.

*John P. Krill, Jr.,* Assistant Attorney General, with him *Robert E. Yuhnke,* Assistant Attorney General, for appellee.

OPINION BY JUDGE BLATT, November 24, 1975:

On April 17, 1974 Carl L. Metzger filed an application with the Borough of Montoursville (Borough) for a permit to install a sewage disposal system pursuant to the Pennsylvania Sewage Facilities Act, Act of January 24, 1966, P.L. (1965) 1535, *as amended,* 35 P.S. §750.1 et seq. Both the Borough's sewage enforcement officer and the Borough Council disapproved the permit on the basis that the proposed system failed to comply with the standards contained in the regulations of the Environmental Quality Board. Metzger then took an appeal to the Environmental Hearing Board (Board) which conducted a hearing on August 30, 1974 and issued an adjudication on February 7, 1975. The appeal was dismissed.

The testimony of Metzger himself, who was the only witness at the hearing, led the Board to the finding that "[t]here is a perched water table approximately two feet below the surface of the ground upon which the sewage disposal facilities have been proposed to be installed." As a result, the Board found that the system would not be in compliance with 25 Pa. Code §73.11 (c) which at the time of the adjudication provided:

"The maximum elevation of the seasonal ground water table or perched water table, as determined by direct observation or by observation of soil mottling shall be at least four feet below the bottom of the excavation for the subsurface absorption area." (4 Pa. Bull. 819.)

In addition, the Board found that it was impossible from the evidence to determine the characteristics of the soil

four feet below the bottom of the excavation so that it could not be determined whether or not the proposed system would be in compliance with 25 Pa. Code §73.11 (d) which then stated at the time of the Board's adjudication:

"Rock formations and impervious strata shall be at a depth at least four feet below the bottom of the excavation for the subsurface absorption area. For purposes of this subsection rock formations shall be deemed to be rock which is so slowly permeable that it prevents downward passage of effluent, or rock with open joints or solution channels which permit such rapid flow that effluent is not renovated. This includes masses of shattered rock fragments with insufficient fine soil to fill the voids between the coarse fragments." (4 Pa. Bull. 819.)

This version of 25 Pa. Code §73.11(c) and (d), however, had become effective on May 12, 1974, a short time after Metzger had filed his application. The pertinent regulation in effect when he filed merely provided:

"The maximum elevation of the ground water table shall be at least four feet below the bottom of the excavation for the subsurface absorption area. Rock formations and impervious strata shall be at a depth greater than four feet below the bottom of the excavation." (2 Pa. Bull. 760.)

We agree with Metzger's contention that he should not have been required to adhere to standards established after he submitted his application. Nevertheless, he has failed to prove his entitlement to a permit even under the less stringent requirements of the prior regulations.

In a case such as this, the burden certainly rests upon the applicant for a sewer permit to establish that he has met the specific conditions imposed upon the grant of such a permit.[1] Therefore, it was incumbent upon Metzger to

---

1. See 25 Pa. Code §21.42. (3 Pa. Bull. 2816-2817.)

establish what soil conditions existed beneath the proposed excavation, no matter which set of regulations applied. Under the regulations in effect at the time of his application, while the existence of the perched water table should not have prevented him from obtaining a permit, he still should have shown that the maximum elevation of the ground water table was at least four feet below the excavation and that there were no rock formations or impervious strata to that same depth. The proposed excavation here was to be at a depth of at least twelve feet but the tests conducted on the proposed site reached only a ten foot depth. The only evidence which arguably relates to conditions beneath that depth was Metzger's testimony as to excavations in nearby lots, and we cannot regard such testimony as satisfying his burden of proof. There must be a much more direct showing of the conditions beneath the proposed site itself.

Alternatively, Metzger argues that his proposed system will cause no pollution so that any regulations which prohibit it would necessarily be unreasonable and would constitute an unlawful exercise of the police power. The regulations challenged here, of course, are legislative in character, for they were issued pursuant to a grant of legislative power contained in Section 9 of the Sewage Facilities Act, 35 P. S. §750.9. Thus, they are subject to the same test with reference to their validity as in an act of the Legislature, *Uniontown Area School District v. Pennsylvania Human Relations Commission*, 455 Pa. 52, 313 A.2d 156 (1973), and a heavy burden, therefore, rests upon the person asserting their unconstitutionality. *Bilbar Construction Company v. Easttown Township Board of Adjustment*, 393 Pa. 62, 141 A.2d 851 (1958). As our Supreme Court has said:

"A court, in reviewing such a regulation, 'is not at liberty to substitute its own discretion for that of administrative officers who have kept within the bounds of their administrative powers. . . . Error or

unwisdom is not equivalent to abuse. What has been ordered must appear to be "so entirely at odds with fundamental principles . . . as to be the expression of a whim rather than an exercise of judgment." ' American Telephone & Telegraph Co. v. United States, 299 U. S. 232, 236-37, 81 L. Ed. 142 (1936)." *Uniontown Area School District, supra,* 455 Pa. at 77, 313 A.2d at 169.

Metzger asserts, of course, that he has met his heavy burden by his own testimony that between 1960 and 1974 he installed about 100 similar systems in nearby locations and that on the basis of his observations he was not aware of any pollution resulting from the use of those systems. Metzger, however, is not a soil scientist, and it is at least conceivable that he may not have recognized every element of pollution which might have existed. Moreover, even if there had been no pollution, the mere possibility that it could result from the installation of the proposed system would be enough to justify the regulations. We must hold, therefore, that Metzger failed to meet his burden of proving that the regulations are unconstitutional.

For the above reasons, we issue the following

ORDER

AND, Now, this 24th day of November, 1975, the order of the Environmental Hearing Board is hereby affirmed.