## City of Lancaster v. Department of Environmental Resources

*Christopher W. Mattson, James A. Humphreys, III* and *Barley, Snyder, Cooper & Barber,* for plaintiff.

*Earl R. Creamer, George T. Brubaker,* and *Hartman, Underhill & Brukaker,* for Home Builders Association of Lancaster County, intervenor.

*Eugene E. Dice,* for defendant.

WATERS, *Chairman,* April 10, 1978—On November 23, 1977, the Department of Environmental Resources (DER) issued an order which

160

prohibited appellant, City of Lancaster, hereinafter "City," from allowing further connections to the municipal sewage treatment plant, which the DER had determined to be hydraulically overloaded. Appellant moved for summary judgment on two grounds: first, that under the doctrine of Federal preemption the DER and this board are bound by the determination of plant capacity contained in appellant's National Pollutant Discharge Elimination System (NPDES) permit; second, that regulation 94.21(3) prohibiting sewer connection "except as approved by the department" is unreasonable and invalid in light of regulations governing the imposition of sewer bans. The second issue raised by appellant has also been raised in a number of recent appeals from "prohibitions" issued by the department.[1] Oral argument on appellant's motion was held March 6, 1978.

We do not agree with appellant's first contention, but as we do agree with appellant's second contention, we deem it unnecessary to discuss the first except to say that the dispute as to plant capacity, to the extent that it remains an issue, will have to be resolved after hearing at which the capacity set forth in the NPDES permit may be offered as evidence.[2] Although disputed, we will assume, for the

1. Williamsport Area Sanitary Authority et al. v. Commonwealth of Pennsylvania, Department of Environmental Resources, EHB Docket no. 78-011-W.

2. The sewage plant permit is alleged to provide for a capacity of 9.49 million gallons per day, while the plant, which is connected to the storm sewer system, actually has been receiving as much as 11.8 mgd. There is a serious factual dispute as to whether the permit does have such a limitation, inasmuch as the NPDES certification for the plant is for 11.8 mgd under permit no. PA 0026719.

purpose of disposing of the motion before us, that the DER's figures are accurate and that the permit limitation is 9.49 million gallons per day (mgd). Indeed, appellant does not deny that this figure has consistently been exceeded.

The aforesaid prohibition order was issued pursuant to a regulation promulgated by the Environmental Quality Board and adopted on October 25, 1977. The regulation in question, 25 Pa. Code §94.21, 7 Pa. Bull. 1380 (1977), provides among other things that if the department determines that either the hydraulic or organic load on the sewerage facilities is exceeding the capacity provided in the permit, then the permittee shall:[3] "(3) Prohibit new extensions of or connections to the sewer system tributary to the overloaded sewerage facilities except as approved by the Department."

---

3. 25 Pa. Code, §94.21 provides:

"If the annual report establishes or if the Department determines that either the hydraulic or organic load on the sewerage facilities is exceeding the capacity approved by the permit, the permittee shall comply with the following:

"(1) Immediately begin work for the planning, design, financing, construction, and operation of such sewerage facilities as may be necessary to provide required capacities to meet anticipated demands for a reasonable time in the future and resulting in a project that is consistent with the applicable official plans approved pursuant to the Pennsylvania Sewage Facilities Act (35 P.S. §§750.1-750.20) and the rules and regulations promulgated thereunder at Chapter 71 of this Title (relating to administration of the sewage facilities program) and consistent with the requirements of the Department and the Federal Government regarding area-wide planning and joint or combined sewerage facilities.

"(2) Submit to the Regional Office, for the review and approval of the Department, a written plan, to be submitted with the annual report or within 90 days of notification of the Department's determination of overload, setting forth the actions to be taken to reduce the overload and to provide the needed

It is clear that the DER can employ the above regulation to stop further sewer connections without the necessity of imposing a sewer ban which is provided for under Regulation 25 Pa. Code §94.33. In order to impose a sewer ban, the law provides that:

"(b) The Department will publish the order imposing the ban in one newspaper of general circulation in the area affected by the ban beginning no later than 48 hours after the imposition of the ban or as soon thereafter as publication schedules allow for a period of two consecutive weeks. The Department will publish the order imposing the ban, following imposition of the ban, once in the Pennsylvania Bulletin, provided, however, that failure or delay in so publishing by the Department shall not in any way affect the date of imposition or validity of the ban.

"(c) The Department, at the time of imposition of the ban, will give notice of the ban to any governmental entity which issues building permits in the area of the ban. No building permit which may result in a connection to the sewer system or increase the waste load to that system shall be issued by such governmental entity after the ban is effective; provided, however, that failure or delay in such notification shall not, in any way, affect the date of imposition or validity of the ban."

We wonder why the DER would ever bother to impose a sewer ban when the same ends could be

additional capacity, including, but not limited to, a schedule showing the dates each step toward compliance with paragraph (1) of this section shall be completed.

"(3) Prohibit new extensions of or connections to the sewer system tributary to the overloaded sewerage facilities except as approved by the Department."

reached by simply imposing a prohibition? No satisfactory answer has been forthcoming.

Intervenor, Home Builders Association of Lancaster County, has raised a question about the constitutionality of the DER's action under the due process clause. It is true that section 1921-A of the Administrative Code of April 29, 1929, P.L. 177, as amended, 71 P.S. §510-21, does require that no DER action shall be final as to a person ". . . until such person has had the *opportunity* to appeal such action to the Environmental Hearing Board." (Emphasis supplied.) Clearly, the due process requirements are met when intervenor came before the board to contest the DER's action. This opportunity was immediately available: Com. v. Borough of Carlisle, 16 Pa. Commonwealth Ct. 341, 330 A. 2d 293 (1974); and Com. v. Derry Township, 10 Pa. Commonwealth Ct. 619, 134 A. 2d 868 (1973).

The real problem that we find with §94.21(3) is the fact that it, in effect, delegates unlimited discretion to the department to do what it must do according to articulated standards under §94.31 and other regulations contained in Chapter 94. Regulation 94.21(3) therefore appears to us to be unreasonable and invalid on its face. If the department determines that an organic or hydraulic overload exists, it may impose the sewer ban under §94.31 or, it appears, it may prohibit connections except as approved by it under §94.21(3). In order to impose a ban under §94.31 the department must find that one or more of three conditions exist.[4]

---

4. 25 Pa. Code, §94.31 provides:

"A ban on connections will be imposed by the Department whenever the Department determines that an organic or

Under §94.21(3), there are no guidelines for the imposition of a prohibition other than the existence of the same hydraulic overload that is an occasion for the imposition of a ban under §94.31. Thus, there is no discernable basis for an affected party to seek redress for an arbitrary decision. If the DER decides to lift or not to lift a prohibition, to grant or not grant an exception, a party is in the position of not knowing what, if anything, can be done to insure some relief. No doubt the board could simply read the regulations together and construe §94.21 as incorporating the provisions of §94.31, §94.55 and §94.56. This, however, was clearly not the intention of the Environmental Quality Board, and we will not construe a regulation in a manner we know was not intended. Secondly, we could write in limitations as we were forced to do in developing case law around the sewer ban orders issued prior to the promulgation of these regulations, incorporating what we deemed to be the minimal requirements to pass the test of reasonableness:

hydraulic overload exists at the plant or any portion of the sanitary sewer system or that the discharge from the plant causes actual or potential pollution of the waters of the Commonwealth and, in addition, that one or more of the following conditions prevail:

"(1) The Department determines that a ban is necessary to prevent or alleviate endangerment of public health.

"(2) The permittee has failed to submit a satisfactory plan or has failed to implement the program as required by §94.21 of this Title (relating to existing overload).

"(3) The failure of the permittee to provide facilities to prevent an organic or hydraulic overload was not caused soley by the unavailability of Federal construction grants under section 201 of the Federal Water Pollution Control Act (33 U.S.C. §1281) for which the permittee has applied and remains eligible."

Com. v. Borough of Carlisle, 16 Pa. Commonwealth Ct. 341 (1974), supra; Com. v. East Pennsboro Township, EHB Docket no. 73-287, aff'd 18 Pa. Commonwealth Ct. 58, 334 A. 2d 798 (1975); Com. v. Bitner, EHB Docket no. 73-154-W, issued December 12, 1973. We are not so disposed.

The DER argues that a "prohibition"as opposed to a "ban" gives it more flexibility to approve connections under certain conditions such as an agreed-upon reduction of flow. However, in response to questions at oral argument as to how the DER would exercise its discretion in considering requests for exceptions to a "prohibition," the considerations stated seemed to be the same as those set forth for modification and removal of a ban under Regulations 94.41 and 94.42. After the imposition of a sewer ban, there are specific provisions for modifications or removal thereof.[5] One such

5. 25 Pa. Code, §94.41 provides:

"A ban may be modified or removed by the Department, in the exercise of its discretion, in accordance with the following conditions:

"(1) If the permittee has demonstrated that steps have been taken which have resulted in the reduction of the actual loading to less than the capacity provided in the permit, the ban may be modified or removed to allow connections up to the permitted capacity.

"(2) If it is affirmatively demonstrated, through the submission by the permittee and approval by the Department of an application for an amendment to the permit, that the actual capacity of the plant or the sanitary sewer system or any part thereof, or both, is in excess of the capacity provided in the permit and is sufficient to prevent an overload until additional capacity is made available, the ban may be modified or removed to allow connections up to the new capacity.

"(3) If the permittee has demonstrated that steps have been taken which have resulted in the reduction of the overload and that public health will not be endangered and that downstream

provision permits the DER to lift the ban if steps have been taken which have resulted in "the reduction of the actual loading to less than the capacity provided in the permit. . . . " We note that there is no similar provision for lifting a "prohibition." Further, we note that a sewer ban may be modified if it appears that the actual capacity of the plant is greater than indicated on the permit and steps are being taken for an amendment to the permit. Again, there is no such provision extended to cover a party foreclosed by a prohibition under §94.21 from connecting to a sewer system. Finally, a ban may be modified where there is no danger to the public health and there is a "public need" for the proposed new connections coupled with a program for reduction of the overload. No related provision applies to a sewer connection prohibition. There is even a priority system for allowing such modifications of sewer bans.[6] The most glaring shortcoming in §94.21 is the fact that it provides for no exception—not even the standard ones where a

uses will not be adversely affected, the ban may be modified to allow for limited approval of connections for the elimination of public health hazards, the elimination of pollution, or the connection of facilities of public need, provided that the program for the reduction of the overload continues in a manner which will result in the overall reduction of overload."

6. 25 Pa. Code, §94.42 provides:

"The Department will not modify or remove a ban if the projected number of new connections may exceed the available capacity if the ban is modified or removed unless the person or municipality upon whom the ban is imposed presents a program, acceptable to the Department, for limited approval of connections in a manner which will prevent further overload. This program shall give priority to connections in the following order:

building permit has previously been obtained or where the new source is on the same property, replacing an old one.[7]

It is now beyond dispute that in order for a rule or regulation promulgated by an administrative agency to be valid and enforceable, it must be reasonable: Erie Lighting Co. v. Pa. Public Utility Commission, 131 Pa. Superior Ct. 190, 198 Atl. 901 (1938). In Jenkins Unemployment Comp. Case, 162 Pa. Superior Ct. 49, 56 A. 2d 686 (1948), the Superior Court, in a per curiam opinion, said: "The exercise by an administrative agency of its rule-making function is however subject to various limitations arising out of the fact that the authority is a delegated legislative power, and one indispensable requirement is that the regulation shall be reasonable. 42 Am. Jur. 'Public Administrative Law,' §100." The authority to review regulations to determine their reasonableness arises not from any specific constitutional or statutory provision, but rather from the inherent review power of courts: Penn Anthracite Min. Co. v. Delaware & H. R. Corp., 16 F. Supp. 732 (M.D. Pa. 1936), aff'd 91 F. 2d 634 (3d Cir. 1937), cert. denied 58 S. Ct. 283. This is well stated in 1 P.L.E. 348, §84. "Generally, the determination of an administrative officer or body is subject to review to ascertain whether the action taken is arbitrary, unreasonable, capricious

---

"(1) the elimination of public health hazards;

"(2) the elimination of pollution; and

"(3) the connection of facilities of public need."

7. Both of these exceptions are now specifically provided for in the case of sewer bans under the regulations at §94.55 and §94.56.

or unlawful, since the courts exercise a supervisory capacity to protect parties from an arbitrary and capricious exercise of authority."[8]

In order to be valid, a rule or regulation should be uniform in operation: Com. Tr. Co. v. First Nat. Bk. of New Kensington, 84 D. & C. 421 (1953). It should be reasonable: Pa. R. Co. v. Driscoll, 336 Pa. 310, 9 A. 2d 621 (1939); Phila. v. Pa. P.U.C., 164 Pa. Superior Ct. 96, 63 A. 2d 391 (1949); and not arbitrary or violative of a statute: Robeson v. Phila. Tax Review Bd., 13 Pa. Commonwealth Ct. 513, 319 A. 2d 201 (1974); or violative of any constitutional provision: Bortz Coal Co. v. DER, 7 Pa. Commonwealth Ct. 362, 299 A. 2d 670 (1973). We are unable to say that 25 Pa. Code §94.21(3) is reasonable when read in the light of §94.31 and the other sewer ban provisions.

We believe the regulation in question can stand if it is construed as a method of giving notice to a municipality or sewer authority that the DER believes it to have a hydraulic overload. If the party notified agrees with this determination it can then take immediate steps to reduce the load and, concurring in the findings of the DER, it can properly prohibit further sewer connections. If, however, as in this case, there is a dispute about the applicability of a prohibition, it can refuse to prohibit further connections unless or until the DER issues a sewer

---

8. The discussion on Pa. Administrative Law goes on to state: " . . . The courts usually will consider only the questions of illegal or arbitrary action, and they will not interfere with the administrative determination unless the administrative officer or body has acted arbitrarily, capriciously, unreasonably, or unlawfully."

ban pursuant to its regulations or takes other legal means[9] to accomplish that end.

As the DER's letter of November 23, 1977, contained a direction to appellant to comply with all of the requirements of §94.21, including the filing of a plan to reduce hydraulic overload, the granting of appellant's motion for summary judgment on the question of the validity of §94.21(3), does not entirely dispose of this appeal. To the extent that a dispute remains as to appellant's obligations under §94.21(1) and (2), the appeal is continued and will be scheduled for hearing.

## ORDER

And now, April 10, 1978, after argument and due consideration of a motion for summary judgment filed on behalf of appellants in the above-captioned matters, the same is hereby granted.

THOMAS M. BURKE, dissenting: The City of Lancaster and the Lancaster City Sewer Authority, referred to jointly herein as appellants, in early December 1977, filed a timely appeal from a letter of the Department of Environmental Resources dated November 23, 1977, notifying appellants that the North Sewage Treatment Plant was determined by the DER to be hydraulically overloaded and as a result appellants were required to comply with the requirements of section 94.21 of the DER's rules and regulations, 25 Pa. Code §94.21. On December 30, 1977, the Home Builders Association (intervenor) was granted permission to intervene.

___

9. Nothing we say here could prevent the DER from seeking an injunction to prohibit sewer connections.

A motion for summary judgment was filed by appellants on January 10, 1978, wherein they requested this board to declare the November 23, 1977, action of the DER to be null and void for the following two reasons:

1. The hydraulic load on the sewage treatment plant is within the limits permitted by the plant's National Pollution Discharge Elimination System (NPDES) permit and thus the plant is not overloaded; and

2. Section 94.21 is unlawful and unreasonable.[10]

Intervenor joined in the motion for summary judgment and alleged as a further basis for granting the motion that the action was violative of the due process clauses of the United States and Pennsylvania Constitutions because the action was taken by the DER without prior notice and hearing.

For the purpose of deciding the motion for summary judgment, the factual basis of the DER's November 23, 1977, letter and all reasonable inferences to be drawn therefrom must be accepted as true. Cf. Schacter v. Albert, 212 Pa. Superior Ct. 58, 239 A. 2d 841 (1968). Thus, the DER's contention that the North Sewage Treatment Plant is hydraulically overloaded is accepted as true. A hydraulic overload is defined by §94.1, 25 Pa. Code §94.1, as follows: "Hydraulic Overload—The condition that occurs when the hydraulic portion of the load, as measured by the average daily flow entering a sewage treatment plant, exceeds the average

---

10. An amicus curiae brief has been filed in support of appellants' motion for summary judgment by the Williamsport Sanitary Authority.

daily flow upon which the permit and the plant design are based or when the flow in any portion of the system exceeds its hydraulic carrying capacity [during a recent 3-month period]."

Initially, appellants' contention that the NPDES permit allows the existing flow should be summarily dismissed as a basis for summary judgment. It is apparent from a review of the documents filed with the board and from oral argument on the motion that there are material issues of fact in dispute on, inter alia, the requirements of the NPDES permit and the requirements of the permit required by section 202 of The Clean Streams Law of June 22, 1937, P.L. 1987, as amended, 35 P.S. §691.1 et seq. If genuine issues as to material facts exist, then a case must go to trial: Rose v. Food Fair Stores Inc., 437 Pa. 117, 262 A. 2d 851 (1970).

In challenging the validity of section 94.1 appellants are faced with the same burden as challenging the validity of a statute. The Commonwealth Court in Com. v. Metzger, 22 Pa. Commonwealth Ct. 70, 347 A. 2d 743 (1975), expressed the pertinent principles:

"The regulations challenged here, of course, are legislative in character, for they were issued pursuant to a grant of legislative power contained in Section 9 of the Sewage Facilities Act, 35 P.S. §750.9. Thus, they are subject to the same test with reference to their validity as in an act of the Legislature, Uniontown Area School District v. Pennsylvania Human Relations Commission, 455 Pa. 52, 313 A. 2d 156 (1973), and a heavy burden, therefore, rests upon the person asserting their unconstitutionality: Bilbar Construction Company v. Easttown Township Board of Adjustment, 393 Pa.

62, 141 A. 2d 851 (1958). As our Supreme Court has said:

" 'A court, in reviewing such a regulation, "is not at liberty to substitute its own discretion for that of administrative officers who have kept within the bounds of their administrative powers . . . . Error or unwisdom is not equivalent to abuse. What has been ordered must appear to be 'so entirely at odds with fundamental principles . . . as to be the expression of a whim rather than an exercise of judgment.' " American Telephone & Telegraph Co. v. United States, 299 U.S. 232, 236-37 [57 S. Ct. 170, 172], 81 L. Ed. 142 (1936).' Uniontown Area School District, supra, 455 Pa. at 77, 313 A. 2d at 169 Id. 22 Pa. Commonwealth Ct. at 73, 347 A. 2d 746."

The Pa. Supreme Court in Water and Power Resources Board v. Green Springs Co., 394 Pa. 1, 145 A. 2d 178 (1958), stated the test to which the validity of a statute is subjected: " 'Nothing but a clear violation of the Constitution will justify the judiciary in nullifying a legislative enactment. Every presumption must be indulged in its favor, and one who claims an Act is unconstitutional has a very heavy burden of proof . . . ' if the statutory language be of doubtful import the statute in its entirety and all its provisions must be considered." Id. 394 Pa. at 6, 145 A. 2d at 181. See also Com. v. Delenick, 24 Pa. Commonwealth Ct. 577, 357 A. 2d 736 (1976).

Appellants focus their objections on the third paragraph of the requirements imposed by section 94.21, which prohibits new extensions of, or connections to, a sewer system tributary to the overloaded treatment plant except as approved by the DER.

The regulation does not affect the appellants' right to construct an extension to the sewer system. Whether or not a hydraulic overload exists at the treatment plant, the construction of an extension of the sewage system is prohibited by section 207 of The Clean Streams Law[11], supra, without the approval of the DER. Thus, even prior to the November 23, 1977, action of the DER, appellants were prohibited from the construction of an extension of the sewage system without the DER approval.

The issue before this board therefore is the validity of a regulation requiring a person to seek the DER approval prior to connecting to a sewer system.

The legislature has given the DER the authority to prohibit connections to sewer systems without the DER's prior approval. Section 202 of The Clean Streams Law, supra, states as follows:

"No municipality or person shall discharge or permit the discharge of sewage in any manner, directly or indirectly, into the waters of this Commonwealth unless such discharge is authorized by

---

11. Section 207 of The Clean Streams Law states:

"All plans, designs, and relevant data for the construction of any new sewer system, or for the extension of any existing sewer system, by a municipality, or for the erection, construction, and location of any treatment works or intercepting sewers by a person or municipality, shall be submitted to the board for its approval before the same are constructed or erected or acquired. Any such construction or erection which has not been approved by the board by written permit, or any treatment works not operated or maintained in accordance with the rules and regulations of the board, is hereby also declared to be a nuisance and abatable as herein provided."

the rules and regulations of the board or such person or municipality has first obtained a permit from the department . . . For the purposes of this section, *a discharge of sewage into the waters of the Commonwealth shall include a discharge of sewage by a person or municipality into a sewer system* or other facility owned, operated or maintained by another person or municipality and which then flows into the waters of the Commonwealth. A discharge of sewage *without a permit or contrary to the terms and conditions of a permit or contrary to the rules and regulations of the board is hereby declared to be a nuisance.*" (Emphasis supplied.)

Under section 202, therefore, the DER has the authority to prohibit all connections without the DER approval. In F. & T. Construction Co. v. DER, 6 Pa. Commonwealth Ct. 59, 293 A.ad 138 (1972), the Commonwealth Court stated: "The Department has clearly been given the power to prevent the discharge of sewage into a sewer system by the Clean Streams Law . . ." Section 94.21, which only requires the DER approval if an overload exists, is, therefore, less restrictive than permitted by Section 202 of The Clean Streams Law.

As appellants have chosen to attack the regulation by means of a motion for summary judgment, there is no evidence of record that this requirement is unduly oppressive or burdensome nor is there any evidence of record that the requirement constitutes an unreasonable exercise of the police power as applied to appellants. Notwithstanding the want of such critical evidence to support the heavy burden of proof required of one who challenges the validity of a regulation issued pursuant to a grant of legislative power, appellants would have us declare section 94.21 invalid because it constitutes "the dele-

gation of unlimited discretion to an administrative agency." Appellants contend that section 94.21 allows the DER unbridled discretion to ban all connections to their sewer system as long as the hydraulic overload exists. DER could, appellants argue, use section 94.21 to circumvent the requirements of sections 94.31, 94.32[12], and 94.33[13] of the DER's regulations, 25 Pa. Code 94.31, 94.32 and 94.33, which set forth the conditions which must exist before the DER can impose a ban on connections to a sewage system and which require the DER to publish notice of the imposition of a ban.

The DER does not have unlimited discretion to prohibit connections to a sewer system under section 94.21. The existence of a hydraulic overload, as defined by section 94.1, requires property owners to seek the DER approval prior to installing a connection to the sewage system. However, the DER's approval or denial of connections to the sewer system under 94.21(3) does involve the DER's discretion. See East Pennsboro Twp. Authority v. DER, 18 Pa. Commonwealth Ct. 58, 334 A. 2d 798 (1975). Where the DER has discretion to act, its

---

12. §94.32 states:

"A ban may be imposed by the Department whenever the Department finds that such a ban is needed in order to prevent or eliminate public health hazards or pollution resulting from violations of the Clean Streams Law not otherwise covered by the provisions of this Chapter."

13. §94.33 states:

"(a) A ban imposed by order of the Department will be addressed to the person or municipality who authorizes connection to the sanitary sewer system and who operates the sanitary sewer system and plant. The ban shall be effective immediately upon receipt of the order imposing the ban. . . . "

discretion is limited by the policies and requirements of The Clean Streams Law, including the limitations imposed on the DER by section 4, Declaration of Policy and section 5, Powers and Duties, of The Clean Streams Law, supra. DER's "exercise of discretion" when it approves or denies a connection to a sewer system is reviewable by this board on appeal by an aggrieved party.

There is nothing in this record which would allow us to conclude that the DER will use section 94.21 to circumvent the requirements imposed on the DER prior to imposing a ban under sections 94.31, 94.32, and 94.33.[14]

A regulation cannot be declared invalid because of the mere possibility of abuse by the DER. The Commonwealth Court in Bortz Coal Co. v. Com., 2 Pa. Commonwealth Ct. 441, 279 A. 2d 388 (1971), stated in answer to the contention that the Pennsylvania Air Pollution Control Act of January 8, 1960, P.L. (1959) 2119, as amended, 35 P.S. §4001 et seq., constituted an unlawful delegation of legislative authority to the Air Pollution Commission that:

"One of the discretionary determinations to be made by the Commission is the scientific or technical rules and regulations which determine that

---

14. In fact, counsel for DER asserts in his brief on this matter that the DER has not yet prohibited any person from connecting to the system, since no property owner has petitioned for approval to connect to the system. See appellee's supplemental brief in opposition to appellants' motion for summary judgment, p. 6.

amount of air pollution which should be prohibited in carrying out the legislative intent. If the regulatory agency sets forth unreasonable standards or fails to establish any standards of air pollution, the citizens are protected through the appeal provisions of the Act. Certainly the *possibility* of such an unreasonable determination should not be the basis for a holding that there has been an unlawful delegation of power. As stated before, we hold that there is not an unlawful delegation of powers in the Air Pollution Control Act." Id. 2 Pa. Commonwealth Ct. at 449, 279 A. 2d at 394. (Emphasis in original.)

In summary, section 94.21(3) does not, by itself, prohibit connections to a hydraulically overloaded sewage system; rather it requires prior DER approval of the connection. It is, of course, true that the power to approve is the power to deny. However, I don't believe we should assume that the DER will act unreasonably in reviewing requests for approval to connect. Certainly, an unreasonable action by the DER is reviewable by this board and reversible as an abuse of discretion.

Therefore since: (1) DER has the authority to require a party to seek its approval before connecting to a sewage system; (2) There are no facts of record on which to base a finding that DER will employ section 94.21 in an unreasonable manner; (3) Appellants have not met the heavy burden required by DER v. Metzger, supra, to declare a regulation invalid; and (4) This board cannot declare a regulation invalid on the mere possibility it will be abused by the DER, I would dismiss appellants' motion for summary judgment.